THE KNICKERBOCKER LIFE INSURANCE COMPANY, Appellant and Respondent, *v.* GEORGE W. NELSON et al., Appellants and Respondents.

Defendant, G. W. N., procured from plaintiff a loan of $17,000, giving therefor his bond, secured by mortgage on certain real estate in S. Plaintiff foreclosed the mortgage, and at the sale purchased the premises for $7,000, taking judgment against G. W. N. for $11,140.45, the deficiency. G. W. N. subsequently applied to plaintiff for a loan of $50,000,

offering, if the loan was made, to buy back the S. property for $20,000, giving a mortgage on certain other real estate for $70,000, the amount of the loan and the purchase-money. This offer was declined, but it was subsequently agreed that plaintiff should make the loan; that G. W. N. should take a conveyance of the S. property, give a mortgage thereon for $10,000, and execute his four bonds secured by mortgages upon the other property for $70,000. The agreement was carried out; the consideration in the deed of the S. property was stated at $30,000. In an action to foreclose the four mortgages, the only evidence as to the value of the S. property was the price it brought on the first sale; that on the foreclosure of the $10,000 mortgage it was again bid in by plaintiff for less than $10,000; the testimony of G. W. N. that its full and fair value was $10,000; and the testimony of plaintiff's counsel, who negotiated the transaction, who upon being asked as a witness, if he considered the property worth $20,000, answered he did, " to any one who wanted it." When asked what the $10,000 mortgage was given for, he answered that it was the proposition of G. W. N. to give $30,000 for the property. G. W. N. testified that he agreed to give $10,000 as a bonus if plaintiff would make the transaction, and that the $10,000 mortgage was given for such bonus. Plaintiff's witnesses testified in substance that the price of the S. property was put at $30,000. *Held,* that the transaction was a usurious loan, the portion thereof relating to the S. property being a mere device to evade the usury laws.

G. W. N. conveyed the property covered by the four mortgages to H. W. & P., subject to said mortgages, which the deed recited were "part of the purchase-price of the premises." Said grantees conveyed the premises to W., subject to the same mortgages, W. reconveyed to G. W. N.; this conveyance was not made subject to the mortgages. *Held,* that where, as in this action, the mortgagee seeks to enforce the usurious agreement, and asks no relief upon the ground that by any arrangement between the mortgagor and his grantees the land had been subjected to the payment of the mortgage debt, the usury was a good defense; that nothing short of some act on the part of plaintiff, showing its acceptance of the benefits of the implied covenant between G. W. N. and his grantees, would suffice to entitle him to such benefit.

As to whether such acceptance would do so, *quære.*

Also *held,* that the commencement of the action to foreclose, or the *lis pendens,* were not acts of plaintiff accepting the benefits of the provisions of the deed.

Also *held,* that the obligation on the part of the grantees of G. W. N. was to hold the land for his benefit and indemnity, not for the benefit of plaintiff; that it was therefore in his power to cancel the obligation and revoke the dedication of the land to the payment of the mortgages; that G. W. N., by the reconveyance, acquired a perfect title to the property, and a right to interpose the defense of usury, the same as if he had never parted with the equity of redemption.

*Hartley* v. *Harrison* (24 N. Y., 173); *Schermerhorn* v. *Talman* (14 id., 93), distinguished.

The conveyance from W. to G. W. N. was made after issue was joined in this action. On the trial the court, by order, granted G. W. N. leave to amend his answer by setting up such conveyance. *Held,* no error.

The price at which real estate sells upon foreclosure sale is competent evidence as to its value.

(Argued June 10, 1879 ; decided September 16, 1879.)

THE nature of the appeals and of the action, and the facts, are set forth in the opinion. (The decision below upon defendant's appeal reported, 13 Hun, 321.)

*Samuel Hand and Henry W. Johnson,* for plaintiff. The defense of usury, being a personal defense, was not available to Ruea Nelson. (*Green* v. *Morse,* 4 Barb., 335; *Bullard* v. *Raynor,* 30 N. Y., 206; *Chamberlain* v. *Dempsey,* 36 id., 148; *Williams* v. *Tilt,* 36 id., 326; *Brooks* v. *Avery,* 4 Coms., 225.) There was no such misrepresentation to Ruea Nelson as would discharge him from liability as guarantor. (Story's Eq. Jur., §§ 191–199, 204; *Best* v. *Stowe,* 2 Sandf. Ch., 298; *Davis* v. *Meeker,* 5 J. R., 354; *Slaughters* v. *Gerson,* 13 Wall., 379; *Mastersen* v. *Beers,* 1 Sweeney, 419.) Facts occurring after an answer has been put in can only be set up by a supplemental answer. (Wait's Pr., 504; *Horn-fager* v. *Hornfager,* 6 How., 13; *Hoyt* v. *Shelden,* 4 Abb., 59; *Garner* v. *Hannah,* 6 Duer, 275; *Holyoke* v. *Adams,* 59 N. Y., 237; *Spears* v. *Mayor,* 72 id., 444; *Fiedler* v. *Darrin,* 50 id., 440.) There is no way by which a usurious debt or security, in whole or in part, can be rendered valid as an executory contract. (*Miller* v. *Hull,* 4 Den., 104; *Brackett* v. *Barney,* 28 N. Y., 333; *Cope* v. *Wheeler,* 41 id., 303; *Hartley* v. *Harrison,* 24 id., 170.) The conveyance to George W. Nelson was a conveyance of the equity of redemption only, and did not give the purchaser the right to contest the mortgage upon the same ground Nelson could. (*Shufelt* v. *Shufelt,* 9 Paige, 145; *Given* v. *Cambee,* 13 Mass., 515; *Bridge* v. *Hibbard,* 15 id., 103; *Post* v. *Dart,* 8 Paige, 641; *Morris* v. *Ford,* 5 Barb., 130; *Merchants' Ex. Bk.* v. *Com. Warehouse Co.,* 49 N. Y., 642; *Boyden* v.

*Smith*, 26 Barb., 635; *Billington* v. *Wagoner*, 33 N. Y.,
31–34; *Green* v. *Morse*, 4 Barb., 432; *Wells* v. *Chapman*,
13 id., 561; *Warwick* v. *Dawes*, 26 N. J. Eq., 548.)

*Samuel W. Morris*, for defendants. The question for the
General Term was, whether the conclusions of the trial
judge were against the weight of evidence, and unless they
were clearly wrong they should not be disturbed. (*Crane*
v. *Bandouine*, 55 N. Y., 264; *Westerlo* v. *De Witt*, 36 id.,
345; *Arnoux* v. *Homans*, 25 How., 427; *Monell* v. *Mar-
shall*, id., 425; *Matteson* v. *Demorest*, 4 Robt., 171; *Sinclair*
v. *Tallmadge*, 35 Barb., 602; *Sheldon* v. *H. R. R. Co.*, 29
id., 229; *Heritage* v. *Hull*, 33 id., 349; *People* v. *Townsend*,
37 id., 529; *Hoagland* v. *Wright*, 37 Bosw., 395; *H. and N.
H. R. R. Co.* v. *N. Y., N. H. R. R. Co.*, 3 Robt., 410;
*Mazette* v. *H. R. R. Co.*, 3 E. D. S., 98; *Spencer* v. *Utica
R. R. Co.*, 5 Barb., 337; *Shuart* v. *Taylor*, 7 How., 251;
*Durkee* v. *Mott*, 8 Barb., 423; *Shank* v. *Hanley*, 71 N. Y.,
353; *Nicholson* v. *Connor*, 7 N. Y. W. Dig., 524.) The
addition of the eighteenth allegation to the answer of the
defendant George W. Nelson, was properly allowed by the
court. (Laws 1876, chap. 431, § 8; Moak's V. S. Pldgs.,
829, 655, 656; *Woodruff* v. *Dukie*, 5 Robt., 620; *Dunn* v.
*Baker*, 12 How., 521; *Snyder* v. *White*, 6 id., 321; *La Farge*
v. *Carrier*, 1 Wend., 89; *Lawrence* v. *Ash*, 9 J. R., 250;
*Holyoke* v. *Adams*, 59 N. Y., 233.) The order of General
Term affirming order of Special allowing this addition,
was not appealable to this court. (*Medbury* v. *Swan*, 46
N. Y., 200; *Getty* v. *Spaulding*, 58 id., 636; *Bennett* v.
*Lake*, 47 id., 93; *Richtmeyer* v. *Remsen*, 38 id., 206; *McCann*
v. *N. Y. C. and H. R. R. Co.*, 50 id., 176; *Arthur* v. *Gris-
wold*, 60 id., 143.) No cause of action was proved against
Ruea Nelson; his liability did not accrue until after a sale
of the property, a deficiency and a demand upon him for
the amount. (2 R. S., 191, § 154.) The mortgage being
usurious was void, and hence no subsequent act of the mort-
gagor could ratify or confirm it, or make it a valid mort-

gage. (*Cope* v. *Wheeler*, 41 N. Y., 303; *Miller* v. *Hull*, 4 Den., 104; *Brackett* v. *Borney*, 28 N. Y., 333; Tyler on Usury, 381; 1 R. S., 726, § 508; 4 id., 460, § 405; *Minturn* v. *Farmers' Trust Co.*, 3 Coms., 498; *Alerton* v. *Belden*, 49 N. Y., 378.) The purchaser from the mortgagor, subject to the mortgage, is precluded from setting up the defense of usury. (*Morris* v. *Flood*, 5 Barb., 130; *Cole* v. *Savage*, 10 Paige, 583; *Post* v. *Dart*, 8 id., 641, *n.*; *Given* v. *Kemp*, 13 Mass., 575; *De Wolff* v. *Johnson*, 10 Wheat., 392; *Sands* v. *Church*, 6 N. Y., 347.) The purchaser was estopped being a stranger to the original and not a privy, but the mortgagor did not, by estopping his grantee, estop himself; he did not waive the defense of usury. (*Stephens* v. *Mair*, 8 Ind. R., 353; *Wright* v. *Bundy*, 11 id., 398; Tyler on Usury, 404–408; *Welsh* v. *Cook*, 65 Barb., 30; *Cole* v. *Wheeler*, 41 N. Y., 311; *Chamberlain* v. *Dempsey*, 14 Abb., 247; *Livingston* v. *Harris*, 11 Wend., 329; *Post* v. *Bank of Utica*, 7 Hill, 391.)

DANFORTH, J. The plaintiff seeks to foreclose four mortgages, made by George W. Nelson, conveying land in Brooklyn to secure the payment of $70,000, according to the conditions of four bonds executed by him to the plaintiff. Charles M. Watkins and Phillip Levy were made defendants as persons having or claiming an interest in the premises, acquired "subsequently to the lien of the mortgages," and Ruea Nelson, because he undertook by his bond in writing, that upon foreclosing the mortgages and sale of the premises, sufficient money should be made to pay the decree and costs and expenses of sale, or in default thereof that he would pay the deficiency "to the amount of $20,000." The usual judgment is demanded; first, for a sale of the premises; second, that George W. Nelson pay the deficiency thereon if any; third, that Ruea Nelson pay the same up to $20,000. The defendant Levy did not answer. The other defendants answered separately, setting up the defense of usury, and Ruea Nelson also charged that

he was induced by the plaintiff's fraud to execute the bond above referred to. Upon the trial at Special Term, the court by order dated May 30, 1877, allowed the defendant George W. Nelson to amend his answer, by setting up a reconveyance of the premises to him after issue was joined as hereinafter stated. And upon the evidence at the trial the judge found the fact of usury in favor of the defendants, and that Ruea Nelson was induced by the fraud of the plaintiff to execute his bond. But he also found that on the 19th day of February, 1875, George W. Nelson and wife conveyed the premises described in the several mortgages to Messrs. Leinback, Wolle & Pettee by deed containing these words, " subject, nevertheless, to certain mortgages executed by the parties of the first part to the Knickerbocker Life Insurance Company," describing the mortgages in question and adding, " which mortgages and the money owing thereon are a part of the purchase-price of the premises," and that they, on the 15th day of March, 1875, conveyed the same premises to Charles M. Watkins, subject to the same mortgages with interest from 1st November, 1874. That on the 23d day of March, 1876, Watkins reconveyed the premises by deed to George W. Nelson, but that conveyance was not made subject to the mortgages nor either of them and the learned trial judge found as conclusion of law : First, that George W. Nelson having conveyed the land subject to the conditions above mentioned cannot avail himself of the defense of usury, so far as the land covered by the mortgages is concerned ; but, Second, that the defense is available against his bond, and judgment was given dismissing the complaint as to him. Third, that the bond executed by Ruea Nelson was obtained by fraud and is null and void and judgment is ordered in his favor canceling the bond. Fourth, that the plaintiff as to the other defendants is entitled to judgment of foreclosure and sale of the mortgaged premises.

The defendant George W. Nelson excepted to the first and fourth conclusions of law, and appealed to the General

Term from so much of the judgment as was thereon entered. On the 12th of February, 1878, the General Term reversed the judgment entered on those findings and declared the several bonds and mortgages usurious and void. Judgment on this decision was entered November 23, 1878. The plaintiff excepted to the findings of fact above referred to and to the second and third conclusions of law of the trial judge, and appealed to the General Term from so much of the judgment as they authorized. They also appealed from the order of May 30, 1877, allowing the amendment of the answer. The General Term affirmed this order, and May 15, 1878, reversed so much of the judgment as was appealed from by the plaintiff and granted a new trial "upon questions of fact." The plaintiff applied to the General Term to conform the decision of February 12, 1878, to that of May 15, 1878, and on September 13, 1878, an order was made denying the application. The defendants George W. and Ruca Nelson appealed to this court from the judgment of May 15, 1878, granting a new trial, giving the usual stipulation for judgment absolute. The plaintiff appeals from the order of September 10, 1878, affirming the order of May 30th, giving leave to amend, and from the judgment of the General Term entered November 23, 1878, and upon that appeal desires to review the intermediate orders above referred to. The appeal by the defendants is to be first considered. It brings up for review the decision of the General Term reversing the judgment of the Special Term and granting a new trial upon questions of fact. We are therefore to examine the evidence and determine the issues of fact presented upon the trial. (*Godfrey* v. *Moser*, 66 N. Y., 250.)

From this examination it appears that the defendant George W. Nelson had agreed to buy of one Herring some vacant lots in Brooklyn at the price of $45,000, and to obtain money to make the payment applied to the plaintiff for a loan upon that property as security. After oral negotiations with some of the officers of the company, in the course of which he offered to buy of it certain property called the Saugerties

property, provided they would make the loan, he presented to the plaintiff a written application for a loan of $70,000 at seven per cent on his bond, and mortgage upon the property above referred to, and now described in the complaint in this action. The loan was granted upon an agreement which was carried out as follows : The plaintiff paid to Herring $45,000, and to George W. Nelson or to his use $5,000, retained $20,000 "to be applied to the purchase of the Saugerties property," executed a deed of it to George W. Nelson, in which the consideration is stated to be $30,000, and he gave back the mortgages now in suit, and a mortgage upon the Saugerties property for $10,000 ; and Ruea Nelson, his father, for his accommodation and at his request gave his bond to the plaintiff conditioned as above stated. *Was the sale and purchase of the Saugerties property and the $10,000 mortgage an honest and fair transaction, or was it a cover for usury?* This question presents the point of the defendants' appeal, and to it the evidence permits but one answer. We find that George W. Nelson, in the fall or winter of 1871, was the owner of the Saugerties property, and at that time procured from the plaintiff a loan of $17,000 upon it. None of the principal was paid, interest accrued and the plaintiff foreclosed the mortgage. At the sale it purchased the property for $7,000, and on the 2d of August, 1873, took a judgment against Nelson for the deficiency, then amounting to $11,140.45. It was unpaid. As to the value of this property in October, 1874, there is little direct evidence, but it was unsaleable at a price sufficient to reimburse the plaintiff for the loan made by it in 1871. It was sold upon the first foreclosure for $7,000 ; and we find that upon a sale made upon the foreclosure of the $10,000 mortgage prior to the trial, it produced less than $10,000, and was again bid in by the plaintiff, leaving the defendant liable for a deficiency. It may be presumed that the property was advertised and sold in the usual manner, and in such a way as to produce a fair competition among persons actually attending the sale, and

that each party interested did all in his power to procure bidders. There is no evidence that the property on either occasion was sacrificed. The price, therefore, at which it sold furnishes some evidence, although by no means conclusive, as to its value. (*Campbell* v. *Woodworth*, 20 N. Y., 499 ; *Gill* v. *McNamee*, 42 N. Y., 44 ; *Crounse* v. *Fitch*, 6 Abb. Pr. Rep. [N. S.], 187.) There is further evidence. The defendant George W. Nelson testified that its full and fair value was $10,000.

He was interested and his opinion subject to bias — but he was qualified to express it and competent as a witness — the plaintiff made no objection to it upon the trial. No effort was made on cross-examination to ascertain the grounds of his opinion or in any respect to diminish its weight. It seems to have been accepted as correct. It is imposible to account for the conduct of the plaintiff on the trial upon any other hypothesis. The question to which his evidence was addressed was a vital one, and it is a fact of great significance that no testimony was offered by the plaintiff in answer to it. There was nothing to detract from its force, and credit should therefore be given to it. (*Byrd* v. *Hall*, 2 Keyes, 649.) The inference warranted by the actual sales concurs with the testimony of the witness. We find also that the omission of the plantiff to give evidence upon this point was not from inadvertence. Mr. Johnson was counsel for the plaintiff at the time of both loans. He was a large stockholder in the company — a member of the finance committee — a director and one of three of the executive committee, especially charged with the conduct of the loan in question. Upon the first occasion he visited the property — made inquires in regard to it, and was informed "that a loan of $17,000 was too heavy for it." During the examination of George Nelson, he had produced a paper in his own handwriting prepared by himself, and signed by Nelson by which the latter requested him to apply $20,000 of the $70,000 loan "to the purchase of the Saugerties property." He was introduced by the plaintiff as its witness and upon cross-exam-

ination by the defendants' counsel, his attention was called to that paper and the item, and he was asked "you did not consider this property at Saugerties worth $20,000 did you?" He replied, "I did to any one who wanted it." The real value was the measure which the question called for, and it was not given. I conclude then that the plaintiff was unable to increase the estimate of value put upon the property by the defendant, and we are to determine it upon evidence which is not even conflicting. The testimony of the defendant, the two sales — the silence of the plaintiff under such great provocation and with abundant opportunity to know and express the truth, its omission to relieve the case of the pressure placed upon it by the uncontradicted evidence brings us to the conclusion reached by the learned trial judge "that the value of the Saugerties property did not exceed $10,000." Notwithstanding this, however, if the agreement was that the defendant should take the Saugerties property off the plaintiff's hands at such price as would restore to them the loan made in 1871, however hard the performance, the defendant would have no legal ground of complaint. But this was not the contract or the purpose of the plaintiff. For that, $20,000 would have been ample. But the price insisted upon was $30,000. It was so stated in the deed. All of it was paid or secured, $20,000 in money, $10,000 by mortgage. It is true that the proposition to take the property came from Nelson, but that is immaterial. It resulted in a contract in which the minds of both parties met, and it is obvious that the proposition was made by the defendant and accepted by the plaintiff for no other purpose than to provide a way by which the defendant should obtain a loan and the plaintiff compensation beyond lawful interest. This was well understood by the plaintiff. It ran through the entire negotiation; the two things were inseparably connected. The plaintiff would make no loan without a sale. The defendant would not buy without the loan. The purchase of the Saugerties property was at an exorbitant rate, disadvantageous to the borrower, and bene-

ficial to the lender.   It was forced into the contract and the case brought within the statute.   The evidence on either side establishes this.   According to the plaintiff's witness an application was first made for a loan upon the Brooklyn property, and the defendant told by its officer that he did not think it would be granted because the property was unimproved ; but he suggested to Mr. Nelson, "if he had any proposition to make to submit it to the company."   He subsequently told the president he wanted a loan of $50,000 and if the company would make it he would buy back the Saugerties property at $20,000, and make the two transactions together.   He was referred to Mr. Johnson. Both have been examined and there is little difference in their testimony upon this point.   Nelson says, I told Johnson I would give $20,000 for the property provided they would make me this loan of $50,000.   He replied "at what they bid it off and the deficiency against me, and the interest and costs would make it over $20,000, but said he would talk with his folks."   Johnson states the conversation somewhat at length.   He says that " two or three weeks after the first interview George Nelson came in, told me that he had conversed with some of the officers of the company in regard to a loan, that he wanted to get the Saugerties property back again, and if the company would satisfy the judgment for deficiency against him and reconvey the Saugerties property to him, he would give $30,000 *conditioned* on the company's making a loan of $70,000 on this property in Brooklyn, and would pay $20,000 of the loan towards the purchase of the Saugerties property, the balance to be secured by a mortgage of $10,000."   Other interviews were had with the officers of the company, but none unlike those stated.   In all, the proposition to buy was coupled with the condition for a loan, and while $20,000 was refused, $30,000 was accepted as the price to be paid, and Nelson was informed that the matter was in the hands of a committee consisting of Nichols, the president, Johnson and Studwell.   Nelson states the negotiation very plainly.   At the second inter-

view with Nichols, the president, he says : " I told him I would give them $10,000 bonus if they would make this transaction, and to cover it up so they would not be troubled, they might reserve $20,000 for the purchase of the Saugerties property and take a mortgage on it for the $10,000 bonus," and the " deed be made for $30,000 instead of $20,000 ; " and it is plain from the evidence that he was given to understand that the $20,000 included the deficiency judgment, and the price paid in the foreclosure for the property. This is bluntly stated by the witness, but every act of the parties and much of the plaintiff's testimony confirms him. The trial judge asked the witness Nelson, " tell me about the $10,000 mortgage, what was it given for." He answered : " Given for a bonus to induce them to make the transaction." The judge asked the same question of Johnson, " What do you say the $10,000 mortgage was given for ? " He answered, " the judgment for deficiency and the cost of the property exceeded at the time $20,000, it was his own proposition." This means, as I understand it, that the cost of the property to the plaintiff, viz. : $7,000 the sum paid on foreclosure and the deficiency judgment of $11,140.65, besides interest, and seems so to have been intended by the witness and understood by the trial judge for the next question was : " Now you got $10,000 more than that." Answer, " Yes." Question, " What do you say it was for ? " Answer, " It was the proposition of George Nelson to pay $30,000 for the property and he asked the company for this loan to enable him to do so." The examination is then renewed by plaintiff's counsel who says : " The consideration expressed in the deed is $30,000 ?" Answer, " Yes." And upon cross-examination he says : " The mortgage was given to secure the balance of the purchase-money," and was to be given as a part of the arrangement that a deed was to be given. Studwell, the other member of the executive committee having in charge this loan says : " George said he would give $30,000 for it," the Saugerties property. " He would not have got the

loan unless we had got the mortgage back." Mr. Nichols the president says: "The offer in substance was they would take the Saugerties property — they would buy the Saugerties property at $20,000. I declined to consider the matter at all." · Question, "There was a $10,000 mortgage given on the Saugerties property, do you recollect what it was, how it arose?" Answer, "In the course of negotiation the offer for the Saugerties property was advanced to $30,000." There is other testimony but all has the same tendency. It has been said and reiterated by the courts, from the time the schemes and contrivances of lenders became the subject of judicial examination, that there is no contrivance whatever by which a man can cover usury, (*Jeston* v. *Brooke*, 2 Cowp., 793), and that no subterfuge shall be permitted to conceal it from the law (*De Wolf* v. *Johnson*, 10 Wheat., 385), yet if this agreement can stand it will require no wit or subtilty to circumvent the statute. The case is a very plain one, the transaction relating to the Saugerties property was a mere device, an attempt to evade the statute relating to usury. The judgment of the General Term, therefore, which reversed the judgment of the Special Term and granted a new trial, should be reversed.

The first question presented by the plaintiff's appeal relates to the correctness of the order permitting the defendant Nelson to amend his answer. By it he was allowed to set up a conveyance to himself from the defendant Watkins of the premises described in the complaint, coupled with a statement that the interest so conveyed is the same as that theretofore "conveyed by the said George W. Nichols to Felix Leinback, Augustus Wolle, and Simon E. Pettee, and by those persons conveyed to Charles M. Watkins."

The order for aught that appears was made upon notice or notice was waived — it was made as it recites, on motion and after hearing counsel for both parties, and though called an amendment may be regarded as a supplemental answer. It does not appear that any objection was made at Special Term — either to its form or upon its merits. It was one

however within the power of the trial court to make and it does not appear that the power was improperly exercised.

The plaintiff's appeal from the judgment of November 23, 1878, requires us to consider the effect of the deed executed by George W. Nelson to Leinback and others, and the final conveyance set up in the amended answer. And first, it is clear that neither Leinback and his associates, the grantees of Nelson nor Watkins, to whom they conveyed, could successfully interpose the defense of usury ; but that is because they· purchased the equity of redemption only, subject to the lien of the mortgage. (*Green* v. *Kemp*, 13 Mass., 515.) The rule declared in the case cited has been repeatedly followed.and must now be deemed firmly established. It stands upon the fact that such a purchaser acquires only the right to redeem and upon the principle that if he will not avail himself of this right he cannot hold the land, and having no title in the land cannot be permitted to avoid the mortgage by plea or proof of usury. (*Shufelt* v. *Shufelt*, 9 Paige, 145 ; *Post* v. *Dart*, 8 Paige, 639 ; *Morris* v. *Floyd*, 5 Barb., 130 ; *Sands* v. *Church*, 6 N. Y., 347.) "For as to so much of the property which is necessary to satisfy such lien he is not in privity in estate with the borrower, for so much of the property is not assigned or granted to him." This is the statement of the reason of the rule by JONES, J., referred to in the opinion of this court in *Merchants Exchange Bank* v. *Commercial Warehouse Company* (49 N. Y., 642). It is also stated to the same effect though in a different manner by the Supreme Court of the United States, in *DeWolf* v. *Johnson* (10 Wheat., 369). Where they say that "a contrary rule would hold out no relief to the borrower ; it would be only transferring his money from the pocket of the lender to the pocket of the holder of the equity of redemption." This remark is quoted with approval in *Sands* v. *Church* (6 N. Y., 355) ; where holding that the defense was unavailing to such a purchaser, the court say : "He had made a valid

contract and for a valuable consideration that, so far as he owned or was interested in the mortgaged premises, he would hold, subject to the payment of the debt. It would be contrary to equity to allow him to avoid its payment. It would be discharging him from his obligation, and leaving the mortgagor still liable. It would be releasing the land from the incumbrance when he had agreed that it should be subject to it." And upon this ground of contract was placed the decision of the court. The rule can have no application to the defense when interposed by the mortgagor and borrower. The entire estate is now his, subject to no covenant and bound by no contract. His grantees were never under any personal obligation to pay off the mortgage; they had not assumed it. (*Belmont* v. *Coman*, 22 N. Y., 438; *Dingeldein* v. *Third Av. Railroad Co.*, 37 id., 575.) Doubtless Nelson, the mortgagor and grantor, might have compelled payment from the land while it was in the hands of his grantees, but he did not do it. Whether the plaintiff might have by proper proceedings subjected the land while in the hands of the mortgagor's grantees to the payment of the debt it is not necessary to inquire, for such proceedings were not taken. The present suit was not brought for, nor is it adapted to that purpose. The complaint contains allegations, usual in actions of foreclosure and no others. The plaintiff seeks to recover upon the ground of default on the part of the obligor and mortgagor in making payment according to the condition of the bond and mortgage, and asks no relief upon the ground that by any arrangement between the mortgagor and his grantees the land had been subjected to the payment of the mortgage debt. I do not say that it would help the plaintiff to have done so; but nothing short of some act on its part indicating its acceptance of the benefit of the implied covenant entered into between Nelson and Leinbach and others would suffice; perhaps that would not. The question does not arise here and is not to be decided, for nothing was done or attempted by the plaintiff which raises the

question. The various grantees of the mortgaged premises are made parties simply as persons who had acquired an interest in the premises subsequent to the mortgage. This is not sufficient. The suit is upon the usurious mortgage itself, not upon any new contract and the plaintiff is in no better or different condition than it would have been if the title to the land had remained at all times in Nelson. *Hetfield* v. *Newton* (3 Sand. Ch., 615), is in point upon this question and was well decided. It is there held that when the defense of usury is interposed to the foreclosure of a mortgage by the purchaser of the equity of redemption the complainant cannot overcome it by proof that the lands were conveyed subject to the mortgage, unless his bill sets forth the execution and terms of such conveyance. The commencement of the suit then was not an act of the plaintiff accepting the benefit, if any there was, of the provisions of the deed from Nelson to Leinbach, etc., or from them to Watkins. Of course the *lis pendens* could have no greater effect. It was quite unimportant so far as Nelson is concerned for he had actual notice of every fact which could be properly stated in the *lis pendens* and would have been equally bound, although none had been filed. It could only be deemed to give him constructive notice, whereas both as an actor and as party to the suit he had actual notice of every fact which the notice could contain. Neither the conveyance by Nelson nor the declaration subjecting the land to the mortgages was made for the benefit of the plaintiff, nor was it in any sense privy to the contract or the consideration. Nelson intended to benefit himself and the consideration was wholly between himself and his grantees. The declaration made the land the primary fund for the payment of the mortgages; that is primary as between Nelson's liability on the bond and the land. It was as if Nelson had placed so much money in the hands of his grantee to be applied upon the mortgages. The obligation on the part of the grantees of the land was to hold it for the indemnity of Nelson. The plaintiff had no knowledge of this, did not

assent to it, nor was it the party intended to be benefited, it was in the power therefore of the grantor and mortgagor to so change the relation that the obligation on the part of his grantees should be canceled, and the dedication of the land to the payment of the mortgages revoked. (*Simpson* v. *Brown*, 68 N. Y., 355; *Merrill* v. *Green*, 55 id., 270; *Kelly* v. *Roberts*, 40 id., 432; *Thorp* v. *Keokuk Coal Co.*, 48 id., 253.) The forcible and significant inquiry made by the learned Judge JAMES in *Kelly* v. *Roberts* (*supra*), and the conclusion of the court therein, apply with great force to the question now in hand. The effect of the conveyance by Watkins to Nelson was to vest in him so much interest in the land as the former had acquired. Nelson had then a perfect title to the property, and a right to interpose the defense of usury in like manner as if he had never parted with the equity of redemption. *Hartley* v. *Harrison* (24 N. Y., 173) is not to the contrary. In that case the mortgaged premises were declared subject to the usurious mortgage, and so remained in the hands of the grantee who had also assumed its payment. It was held that to him the defense of usury was not available, and for the reason that if it was he would thus " obtain an interest in the land which the mort- gagor never agreed or intended to transfer to him." And as stated by WOODRUFF, J., in *Cope* v. *Wheeler* (41 N. Y., 303), "this would be not because the mortgage was not usurious and void as between the parties thereto, but because he was not at liberty to use that as a defense, having retained in his hands the amount." In that case it appeared that one Elizabeth Crancy mortgaged certain lands to secure an usurious loan of $1,000, and afterwards conveyed the mort- gaged premises to one Huntington subject to the mort- gage, and $1,000 was deducted from the purchase-price in consequence of the mortgage. In a controversy con- cerning certain surplus moneys, the question of the validity of this mortgage became material, and the court say : " The conditional sale to Huntington was not a con- firmation of the original, — an usurious contract while it

remains executory is wholly incapable of confirmation, and although the deed to Huntington was such a waiver as enabled the defendant as against Huntington to enforce the mortgage against the land if he chose, yet as against the borrower himself the waiver was of no force, so that had these Wisconsin lands afterwards become the property of the plaintiffs by conveyance from Huntington, this mortgage remaining unpaid the defense of usury would have been available to them against its enforcements." The case of *Schermerhorn* v. *Talman* (14 N. Y., 93), has no application — in that case the obligation of the defendant had been discharged in bankruptcy. His property including the premises in question had passed to the assignee. From him he acquired a new title, but was under no obligation to pay the debt for which the land was mortgaged. He had ceased to be the borrower — he was a purchaser. In the case before us, Nelson had at all times been liable for the debt, and he had always had an interest in the property to the amount of the usurious mortgage. The plaintiff proceeds against him as a debtor and against the land because of his mortgage to secure the debt. Upon principle and authority the judgment appealed from by the plaintiff is correct.

The order and judgment of the General Term entered on the 22d day of May, 1878, in the office of the clerk of Kings county, reversing the judgment of the Special Term in this action and granting a new trial should be reversed, a new trial denied and the judgment of the Special Term so far as appealed from by the plaintiff affirmed, with costs.

The order of the General Term entered in said office on the 30th of September, 1878, affirming the order of the Special Term allowing the defendant Nelson to amend his answer should be affirmed, with costs.

The judgment of the General Term entered in said clerk's office on the 23d day of November, 1878, should be affirmed, with costs.

All concur, except ANDREWS, J., absent.

Judgment accordingly.