WILLIAM T. B. MILLIKEN, as Executor, etc., Appellant, *v.* ELLEN GOLDEN and Another, as Administrators, Respondents.

*Conveyance subject to a mortgage, without notice to the mortgagee — evidence as to actual and nominal ownership of a mortgage — usurious transaction.*

A clause in a deed making it subject to a mortgage may, by the judgment in an action to which the owner of the mortgage is not a party, be eliminated from the conveyance without the consent of the mortgagee.

The evidence that will not justify a referee in holding a person to be the actual, and not the nominal, owner of a mortgage, considered and commented upon.

A person borrowed $4,500 of another, who paid the same by canceling a mortgage and notes of the borrower, by deducting from the balance a bonus of $300 for procuring the loan, and by giving $1,100 to the borrower. The canceled indebtedness, at the time of the giving of the mortgage to secure the payment of $4,500 from the borrower to the lender, amounted to $2,265.84.

The amount of $1,100 was arrived at by computing the interest on the mortgage discharged at the rate of one and a half per cent per month and the exaction of $540 instead of $300, the amount due on the notes, in addition to the bonus of $300.

*Held,* that the transaction was a single one and was usurious.

APPEAL by the plaintiff, William T. B. Milliken, as executor of the last will and testament of John H. Hillier, deceased, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the city and county of New York on the 25th day of January, 1893, upon the report of a referee dismissing the plaintiff's complaint, with costs, and directing that the injunction staying the foreclosure of the mortgage be vacated, and that said action proceed to judgment and a sale of the mortgaged premises.

*Thomas G. Shearman,* for the appellant.

*Sidney F. Rawson,* for the respondents.

O'BRIEN, P. J.:

This action was commenced by John H. Hillier to compel the surrender and cancellation of a bond and mortgage for $4,500, which were executed by him on December 1, 1874, to the defendant Ellen Golden, and to restrain a suit which had been commenced by Ellen Golden against George H. Wooster to foreclose the mortgage. The

mortgage covers property on Staten Island, which, in February, 1877, was conveyed by Hillier, the mortgagor, to George H. Wooster by a deed containing the usual full covenants and warranty. The complaint sets up usury and alleges that William Hastings was the real party in interest, and made the loan with his own funds, using the name of his sister Ellen Golden, who was a married woman, merely as a cover for the usury; that Wooster, to whom the premises had been conveyed free and clear of all incumbrances, could not set up the usury in a suit brought to foreclose the mortgage, and that Hillier would, therefore, under the covenants contained in his deed, be liable to indemnify Wooster against the judgment of foreclosure and sale.

It appears that after the mortgage had been made by Hillier to the defendant Golden an arrangement was made between the former and one Wooster to exchange equities which each of them had, Hillier in the Staten Island property mortgaged to Golden, and Wooster in certain property in the city of New York. No money passed, but Hillier and Wooster simply exchanged deeds, each one taking the exchanged property subject to the mortgage thereon. Wooster having neglected to pay interest on the Staten Island property, the defendant Golden commenced a foreclosure action, in which Wooster interposed the plea of usury. This answer was adjudged frivolous, and upon appeal such judgment was affirmed.

Thereafter, in a suit between Wooster and Hillier, and without notice to Mrs. Golden, the mortgagee, a judgment was taken expunging from the record and from the deed the subject clause in the deed to Wooster, leaving the subject clause in the New York property deed intact. Thereafter this action was brought in the name of Hillier to enjoin the foreclosure of the Golden mortgage on the ground that it was usurious.

The decisive question presented upon this appeal is, whether the money represented by the Golden mortgage was the money of Mrs. Golden or of one William Hastings. If the latter, we think that, upon the facts here appearing, showing that on prior loans made, interest was deducted at the rate of one and a half per cent a month and in addition thereto a bonus of $300, a case of usury was established. The learned referee did not determine this question of whether or not the transaction was usurious, having found as a fact

that the moneys represented by the Golden mortgage were moneys actually advanced by Mrs. Golden, as to whom no proof was offered that would as against her taint the transaction with usury. If the conclusion, therefore, of the referee is sustained by the evidence, that the consideration realized by the plaintiff's decedent Hillier " from the defendant Ellen Golden for the making of said bond and mortgage was the sum of $4,500 paid by defendant Golden to the plaintiff at the time of the making and delivery by plaintiff to defendant Golden of said bond and mortgage aforesaid," then that is the end of plaintiff's case. If otherwise, the judgment should be reversed and a new trial ordered.

By the testimony it is shown that prior to 1877 Hastings acquired a mortgage for $1,750 on Hillier's Staten Island property, which mortgage had been formerly held by one Meyers, who had commenced a suit to foreclose it, and at Hillier's request Hastings purchased the mortgage and advanced the foreclosure costs. In addition to this, Hastings held Hillier's notes, upon which there was due about $300, making Hillier's indebtedness, at the time of the taking of the mortgage in Golden's name, $2,265.84. Nevertheless, it appears that after deducting the amount of Hillier's indebtedness and a bonus of $300 for procuring the loan, there was paid over to Hillier but the sum of $1,100. How this was made up is shown by one of the exhibits in the case wherein it appears that interest was computed at the rate of one and a half per cent per month upon the Meyers mortgage, and the exaction of $540 instead of the $300 due on the notes, and the payment of the additional bonus of $300.

These facts are beyond dispute, as is also the fact that Hillier never, prior to the time that the mortgage was given, nor at any time, knew or had any transactions personally with Mrs. Golden. She, it appears, was a married woman and a sister of William Hastings, and took no part in the transaction leading up to the loan, but throughout, so far as she appeared, was represented by either Mr. Hastings or his son. It also appears that the application for the loan, first of $5,000, and subsequently of $4,500, was made by Hillier to William Hastings and his son, who agreed to procure the loan for him; that subsequently they stated that the loan had been procured from Mrs. Golden, and that as a result the attorney was instructed to draw up the bond and mortgage in the name of Mrs.

Golden as mortgagee. The money advanced by way of loan came from the bank account of the son, who testified that some ten days prior to the closing of the loan his father had given him a check for the amount, which he had deposited in his own bank, and out of which he subsequently drew the money, so that he had the bills present on the day when the loan was closed. It thus appears that the money came from the bank account of William Hastings; and apart from the statement of the son that it was the money of Mrs. Golden, and of the attorney who drew the papers that he was told by Hillier, who seemed to doubt the accuracy of the statement, that it was the money of Mrs. Golden, there is no evidence in the case that she herself advanced the money; but, on the contrary, not only the circumstance connected with the manner in which the money was procured by the son upon the check of his father, but many other circumstances in the case would seem to indicate that William Hastings, and not Mrs. Golden, was the real party in interest.

Hillier testified that until he executed the bond and mortgage he had never heard of, never seen, never written to, and had never known anything about Mrs. Golden; and the only contradiction of this testimony is in the statement of the attorney, that just prior to the making of the mortgage Hillier told him, to use his own language, "in a sneering manner, as if he doubted the truth of it, that Mrs. Golden was to make the loan," and the statement of the son, that he at one time prior to the mortgage had told Hillier that Mrs. Golden was to advance the money. In addition, it was shown that two years and over after the date of the mortgage William Hastings wrote to Wooster, who then owned the mortgaged premises, that he held the mortgage on the property, and he in the previous January received and receipted for the interest on the mortgage. As against the recollection of the attorney, there was placed in evidence his bill for services rendered upon the closing of the mortgage, by which it appears that the amount charged was " to services rendered and disbursements in the matter of the mortgage for $4,500 from J. H. Hillier and wife to William Hastings." Thus, the record shows that prior to the execution of the mortgage Hillier had many business transactions with William Hastings, who held a mortgage on the property, which was discharged, together with a note, with the moneys represented by the present mortgage.

FIRST DEPARTMENT, NOVEMBER TERM, 1893.          [Vol. 73.

That the application was made to William Hastings, and that he was present and received a large portion of the moneys to the extent already stated, is uncontradicted.

On the other hand, except the statement of the son, because that of the attorney was mere hearsay, he not claiming to have any actual knowledge on the subject, no evidence was produced to show that the money advanced for the mortgage was Mrs. Golden's. And it is a significant fact that in this condition of the record she was not called as a witness upon the trial, nor was any satisfactory evidence given to show that she had advanced any portion of the consideration for the mortgage. We say no satisfactory evidence was given, advisedly, because the statement of the son that the money was Mrs. Golden's is very materially affected when we recall the fact that upon cross-examination he stated the source from which he received the money, namely, a check from his father which he deposited in bank and from which he subsequently drew the money. He does not say of his own knowledge that his father got the money represented by the check from Mrs. Golden ; and the case is barren of any evidence, other than his mere naked statement, to show that Mrs. Golden advanced any portion of the money that was loaned to Hillier.

We think, therefore, that in view of the *prima facie* case which was made out upon all the facts and circumstances connected with the transaction, in the absence of anything to show that Mrs. Golden, beyond the use of her name, was in any way connected with the mortgage, the preponderance of the evidence was in favor of plaintiff's contention that Mrs. Golden was the nominal and not the actual owner of the mortgage, which in fact belonged to William Hastings.

The only hesitancy in reaching this conclusion upon the record arises from the fact that the plaintiff's case is made to depend to a great extent upon the testimony of Hillier, which was taken before trial, and his deposition read, he having in the meantime died. William Hastings had also died prior to the trial, and the defendant William H. Hastings, his son, as his administrator, was substituted. Much of Hillier's testimony relates to personal transactions between himself and William Hastings, deceased, and a question is presented as to whether or not this was competent under section 829 of the

Code. Upon the record, however, it is not made to appear that any objection was taken to such testimony and the question is not, therefore, before us.

We must assume, therefore, that this testimony was received without objection, and must be considered as part of the evidence in support of plaintiff's contention. With such evidence in, and in the absence of any evidence showing that Mrs. Golden was the real party in interest, we think the referee erred in finding that Hillier received " from the defendant Ellen Golden, for the making of said bond and mortgage, the sum of $4,500."

It is strenuously urged, however, by respondent, that whether Mrs. Golden was the real or nominal owner of the bond and mortgage, this action cannot be maintained for the reason that Hillier conveyed the property to Wooster subject to the mortgage, and that thus the rights of the parties were fixed, and that the subsequent suit between Wooster and Hillier, by which the clause making the property subject to the mortgage was stricken out without notice to Mrs. Golden, in no way affected or impaired the rights of whomsoever owned the mortgage. The answer to this proposition we think is to be found in the case of *Knickerbocker Life Ins. Co.* v. *Nelson* (78 N. Y. 137), wherein it was held that such a subject clause may be eliminated from a conveyance without the consent of the mortgagee.

Another argument suggested for upholding the judgment is, that the transaction was not usurious either upon the plaintiff's own showing or upon the facts as proved by the defendants, it being insisted that what occurred with respect to the payments by Hillier to Hastings when they came to close the loan would not constitute usury ; that the most that such evidence showed was that Hillier paid usurious interest on this settlement upon confessedly invalid advances before then made, and that the agreement to be bound for any interest when computed upon an overdue claim does not constitute usury. The answer to this, however, it seems to us, is afforded by the transaction itself, which was a single one. The procuring of the loan and the payment of the usury was part and parcel of a single transaction. Hillier did not pay off his obligations and afterwards go to Hastings and obtain the loan in question. He borrowed $4,500, out of which Hastings had the right to retain

the amount legally due on the $1,750 mortgage and on the note and no more. As a matter of fact, however, he retained much more than this, and this additional sum thus retained constituted the usury. But it is not necessary for us to determine that question, for the reason that the referee found that whether there was or was not usury was immaterial, which was an entirely proper conclusion to be reached in view of his other conclusion that the money was Mrs. Golden's and had been advanced by her.

The other questions presented upon this appeal need not be considered, in view of our opinion of the force and effect of the evidence upon the main question as to whether Mrs. Golden was the nominal or actual person in the transaction. We think that the plaintiff had made out a *prima facie* case, which placed upon the defendants the burden of showing that she had really advanced the money; and the burden thus placed upon them we do not find to have been sustained. For this reason, we think that the conclusion reached by the referee upon this question was against the preponderance of evidence, and that the defendants may have an opportunity of presenting such evidence if it exists there should be a new trial.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Follett and Parker, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.