she thought she was entitled to nothing. The sequel proved that the defendant was in no wise mistaken concerning the rights of his client, for with little difficulty he procured a dismissal of the complaint in the partition action, it appearing that the plaintiff therein was without interest in the property, while, upon the defendant's suggestion, the old lady easily made up an account against the nephew for board, services rendered, and money advanced, amounting in all to something over $7,000. This resulted at once in a compromise of the claim of the nephew, leaving the old lady secure in the possession of the legal title to her property, without charge of any kind in favor of the nephew. From this recital it is quite evident that the parties did not deal upon equal terms. On the contrary, their respective conditions were strikingly unequal. One was old, feeble, little used to business or its methods, in ignorance of her legal rights, and misled to her prejudice by a belief that she was without interest in the property; the other, learned in the law, familiar with business, informed concerning the plaintiff and her rights, and possessed of the ability to defend them. It may be—very likely is—a fact that the defendant believed that he might safely deal with the old lady, and that he thought that as he had formerly received no pay from her for his services, and she had no money with which to presently compensate him, he was justified in making the arrangement which he did and taking the mortgage. But it seems to us quite clear that for the time being he overlooked the relation existing between himself and his client, and subordinated her rights to his interest. We have recently had occasion to consider the law bearing upon cases of this character, and have asserted the rule of law applicable thereto. In re Demarest, 11 App. Div. 156, 42 N. Y. Supp. 444. It is not necessary that we repeat it here. Its binding force compels us to a condemnation of the contract entered into in this case. But while we reach this conclusion, we also conclude that there is nothing in the case which calls for a more rigorous rule than will strike out from the mortgage the amount which we regard as excessive for the services which were rendered. The proof shows that their fair value does not exceed $500, and for this sum, with interest, the mortgage may be upheld, applying thereon the payment of the $150.

The judgment should therefore be reversed, and a new trial granted, with costs to abide the final award of costs.

---

(22 App. Div. 511.)

### RORKE et al. v. KINGS COUNTY EL. RY. CO.

(Supreme Court, Appellate Division, Second Department. November 30, 1897.)

1. EMINENT DOMAIN—ELEVATED ROADS—OBSTRUCTION OF LIGHT.
   The fact that an elevated road interferes with and excludes from a building any light it would otherwise have is a cause for injunctive relief if any substantial damage results; otherwise not. It is for a plaintiff seeking damages on that account to establish such pecuniary damage.

2. SAME—DAMAGES RECOVERABLE IN EQUITY.
   In an abutter's action in equity against an elevated railroad company, which has acquired the legal right to construct its railroad in the street, if it appears that no fee damage has been sustained, there can be no recovery

for damages suffered through dust, soot, cinders, and other causes attributable to the operation of the railroad, which, in the absence of support for injunctive relief, are the subject of an action at law only.

8. SAME—EVIDENCE OF DAMAGE.

   In an action by an abutting owner against an elevated railroad company for injunctive relief, a witness for defendant, who qualified as an expert, after testifying that property in plaintiff's vicinity had decreased in value, was asked, "What has been the cause of decrease?" and answered, "The moving of business." *Held* admissible, as showing a general effect caused by the maintenance and operation of the structure upon abutting and neighboring properties.

Appeal from special term, Kings county.

Action by Edward Rorke and James Rorke against the Kings County Elevated Railway Company. From a judgment dismissing the complaint on the merits, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, BRADLEY, and HATCH, JJ.

James A. Sheehan (Stephen M. Hoye on the brief), for appellants.
Welton C. Percy, for respondent.

BRADLEY, J. The plaintiffs, by this action, seek injunctive relief, founded upon the charge that the defendant, by the maintenance and operation of its railroad, has invaded their easements of light, air, and access, or some or one of them, appurtenant to their premises, situated on the easterly side of Fulton street, in the city of Brooklyn. The defendant's railway was constructed in Fulton street in 1888, and since then has been operated. In the year 1890 the plaintiffs became the owners of the premises in question, which were then an inside lot, having a frontage of 28 feet on Fulton street, and a depth of about 97 feet, and there was a business building upon it. In 1892, by condemnation proceedings taken by the trustees of the New York and Brooklyn Bridge to widen Liberty street, 40 feet of the rear of the lot was appropriated. On this rested the rear portion (which had to be taken off) of the building. Thereupon the building was repaired and somewhat remodeled by the plaintiffs. It then ceased to be an inside building, and fronted, not only on Fulton street, but on Liberty street, and on what was known as a "plaza." The structure of the building is of brick, and it has three stories. The first one is occupied as a dry-goods store, and the second story for a printing office. It appears that the light is somewhat affected by the passage of the cars, and by the stoppage of them at the station on the opposite side of the street; and the evidence tends to prove that, in consequence of dust, soot, and cinders from the moving engines and trains, the windows in front on Fulton street have to be kept closed. Those in the store fronting on the street are large plate-glass windows for the showing of goods, as is quite usual in dry-goods stores. The fact that the maintenance and operation of the railroad interferes with and excludes from the building any light which it otherwise would have the benefit of is the consequence of the invasion of that easement of the plaintiffs in the street, and is a cause for injunctive relief if any substantial damage results to them from such invasion, other-

wise not; and it was for the plaintiffs to establish by evidence such
pecuniary damage.     O'Reilly v. Railroad Co., 76 Hun, 283, 25 N. Y.
Supp. 758; Id., 148 N. Y. 347, 42 N. E. 1063.    The plaintiffs proved
that, by the terms of a lease which expired in 1888, the annual rent
of the building was $4,500, and gave evidence tending to prove that,
since they purchased the premises, the rent received for them has
been much less; and a witness called by the plaintiffs as an expert
testified that the premises had greatly depreciated in value since the
railroad was constructed, while property in the blocks next to Fulton
street on Montague and Pierrepont streets, which approach Fulton
street from the west, have during that time appreciated from 50 to
100 per cent.    This, without anything further appearing, would indi-
cate a depreciation in the fee value of the premises, occasioned by
the railroad.

It appears that in 1890 the plaintiffs purchased the property at
public auction for the sum of $18,300.    This evidence was competent
as bearing upon the question of the value of the property at that time.
Insurance Co. v. Nelson, 78 N. Y. 137; Guiterman v. Steamship Co.,
83 N. Y. 358.    They received, as the result of the proceedings taken
to condemn the rear 40 feet in 1892, $18,000.    It is not necessary to
inquire whether that fact could otherwise be treated as bearing upon
the question of value.    It cannot now be so treated, because the evi-
dence of it was not received for that purpose.    The evidence of the
witness before referred to, so called by the plaintiffs as an expert, was
that the value of the 40 feet so taken from the rear of the lot was
$20,000.    The evidence, as given by a witness on the part of the
defense, was that the property, including the premises in question,
on Fulton street, in that locality, had depreciated in value in the last
8 or 10 years, and that property on Washington street, which is a
street substantially parallel with Fulton street, in that vicinity, and
next easterly from it, has also depreciated in value in the same time.
This property on Fulton street is below the city hall.    The witness
says that the cause of the decrease in value of the property on the
street below the city hall was the moving of business from there to
above there on the street; that the removal of the business com-
menced 12 years ago; that the property on the street above the city
hall had increased in value several hundred per cent. in the last 5
or 6 years; and that, in his opinion, the construction and operation
of the defendant's railroad has not affected injuriously the rental
and fee value of property on Fulton street, in the vicinity of the plain-
tiffs' property.    There is no evidence to the effect that the plaintiffs'
easements of air and access have been substantially invaded or re-
trenched by the railroad or its operation; and the only inquiry for the
purposes of the equitable relief sought by the plaintiffs is whether the
plaintiffs suffered pecuniary damage by any invasion of their ease-
ment of light by the defendant's railway.    If no such damages have
been sustained, it is not important for the purposes of this question
whether the plaintiffs have or not suffered damages by dust, soot, and
cinders, and other causes attributable to the operation of the railroad,
since they, in the absence of support for injunctive relief, are the sub-
ject of an action at law only.    A different question would be pre-

sented if it had not appeared, as it did at the trial, that the defendant had acquired the legal right to construct its railroad in the street.

The trial court found that there was no fee damage to the property in question occasioned by the erection and operation of the railroad. When this conclusion was reached, there was no legitimate occasion for the court to consider the question of past damages, since they could be recovered in this action only as incidental to the equitable relief dependent upon the establishment of fee damages. The evidence upon the subject of such damages presented a question of fact; and, whatever view we might have taken of it if the trial had been heard by us originally, the conclusion of the trial court cannot properly be overruled on this review, unless it can be seen that it was clearly against the weight of the evidence. This, in the view which could have been taken of the evidence at the trial, does not satisfactorily appear, and therefore such conclusion upon the question of fact is deemed supported by the evidence.

After the witness who was qualified as an expert had testified that the property in this vicinity on Fulton street had decreased in value within the past few years, he was asked, "What has been the cause of decrease?" and after the objection as incompetent, immaterial, and irrelevant was overruled, and exception taken by the plaintiffs' counsel, the witness answered, "The cause of it has been the moving of business from below the city hall to above the city hall;" and he further testified that there had been such removal of the business. This question called for the expression by the witness of a conclusion quite comprehensive. His opinion, sought by it, was, nevertheless, founded upon his knowledge and observation; and by those means the witness was able to express his opinion of a fact which, it may be, would be difficult to prove in any other manner. If so, it may have been admissible from necessity, which is the general principle upon which opinions of witnesses are permitted as evidence. While, as an original proposition, I should have had some doubt about the admissibility of the evidence, the ruling seems to come within judicial authority reasonably applicable to the question presented by the exception. In Hunter v. Railroad Co., 141 N. Y. 261, 36 N. E. 400, it was held permissible for a witness to answer the question, "In your judgment, was there anything in the condition of Beaver and Water streets which should induce the upward rise in values greater than would have existed in Pearl street had there been no elevated railroad?" also the question, "Would existence of such a structure and the running of trains as described affect the rental value of the property in front of which it was constructed?" and the further question, "Would it affect it favorably or unfavorably, in your judgment?" In delivering the opinion of the court, Judge Gray said: "We think there was no error committed in overruling the objections. Within our decisions, in the course of this elevated railroad litigation, evidence is admissible to show the general effects caused by the maintenance and operation of the elevated roads upon abutting and neighboring properties." The view of the court in that case seems to bring the opinion of a witness as to what has been the cause of the depreciation in a particular vicinity on a street in which the elevated railroad

is operated within the principle of the inquiry for his opinion whether and how the maintenance and operation of such a railroad has affected the property in such locality; and, within the rule applied in that case, the evidence was admissible. The subject of opinions of experts, and the limitations upon their admissibility, in the elevated railroad cases, have had much judicial consideration, and such rules have been adopted as were deemed necessary to the proper presentation by evidence of the facts to be determined. In Roberts v. Railroad Co., 128 N. Y. 455, 28 N. E. 486, the subject received much discussion, and the question there presented was determined by a divided court. Whatever impression may be derived from the general views expressed in the prevailing opinion there, we think the principle applied to the specific question for consideration in the later case of Hunter v. Railroad Co., supra, may be invoked to support the ruling of the trial court in the present case. No further question requires consideration.

The judgment should be affirmed. All concur.