\*Pitney *v.* Leonard and Leonard.

Where a person enters into possession of land under a conveyance from one
claiming the title, such title is presumed to be good until the contrary is
shown.

Where a party has sufficient to put him on inquiry, it is equivalent in equity
to actual notice

In 1813, the defendant John Leonard purchased of J. T.
Pitney 235 acres of land on the west end of lot No. 4, in
Ovid, and went into possession thereof. In 1816, he pur-
chased other 235 acres of the complainant, in the same lot
adjoining the first purchase, for $3,800, and gave back a
bond and mortgage for the purchase-money. The mort-
gage was never registered; and shortly after the last pur-
chase, J. Leonard conveyed 116 acres of the mortgaged
premises with warranty to B. Bryant. In 1819, S. W.
Baldwin claimed the whole of lot No. 4, and brought eject-
ment suits against J. Leonard and others who were in pos-
session. The suit against J. Leonard was defended by him,
and was pending until May, 1825, when J. Leonard en-
tered into an arrangement with Baldwin, under which a
*cognovit* was given, and a judgment entered in the eject-
ment suit. An execution was immediately issued, and J.
Leonard and B. Leonard his son who was living on the
land as tenant to his father, were formally turned out of
possession. As soon as Baldwin was in possession, he
executed a quit claim deed for the 116 acres to the heirs
of Bryant, and another to B. Leonard for the remaining
354 acres; the latter paying $200 in cash, and securing
the payment of $550 more, in full for the purchase-money.

The complainant afterwards filed his bill in this cause to
set aside the judgment and proceedings thereon as fraudu-
lent against him, and to foreclose the mortgage against the
119 acres of the mortgaged premises which were not in-
cluded in the deed to Bryant. The bill was taken as con-

1829.

Pitney
v.
Leonard.

fessed against J. Leonard. B. Leonard put in a plea, which was *overruled, and he then answered the bill; and the cause was heard on pleadings and proofs as against him.

*A. Gibbs*, for the complainant.

*W. Kent* for defendant B. Leonard.

THE CHANCELLOR :—I have not thought it necessary to examine the question whether Aaron Pitney had the legal title to the land at the time he conveyed to J. Leonard. The latter went into possession under that title, which is to be presumed good until the contrary is shown. From the testimony adduced, there is no doubt the judgment in the ejectment suit was confessed for the purpose of destroying the lien of the complainant's mortgage. It was fraudulent and void as against him; and it is hardly possible to believe B. Leonard was not acquainted with the real nature and object of the transaction. He had at least sufficient to put him on inquiry, and that in equity is equivalent to a notice.[1] He admits that he knew of the bond and mortgage, and the judgment which Pitney had obtained against his father on the bond. He knew his father had been contesting the title against Baldwin for years; and as the lands lay within sight of the court house, he could not have supposed that they had been recovered on a trial in the usual way. The judgment was filed and docketed at Utica on the 13th of May. The execution was delivered to the sheriff on the 16th; and on the same day, after allowing himself to be turned out of possession with all due formality on an execution against his father, he purchased the 354 acres of land, worth more than $6,000, for the trifling consideration of $750; and both himself and father

[1] *Peters* v. *Goodrich*, 3 Conn. 146; *Booth* v. *Barnum*, 9 Conn. 286; *Hawley* v. *Cramer*, 4 Cow. 717; *Brush* v. *Ware*, 15 Pet. 112; *Jackson* v. *Cadwell*, 1 Cow. 622; *Tuttle* v. *Jackson*, 6 Wen. 213; see also Am. Ch. Dig. by Waterman, tit. *Notice*.

return back into possession thereof. Under all these circumstances, he either knew the real nature and object of these proceedings or remained wilfully and intentionally ignorant. The judgment in the ejectment suit, and the proceedings and change of possession of the mortgaged premises under the same, must, therefore, be declared fraudulent and void as against the complainant. There must be a reference to a master to compute the amount due on the bond and mortgage, and the usual decree for the sale of the *119 acres of the mortgaged premises, on the coming in and confirmation of the master's report; and that the purchaser be let into possession on production of the master's deed, and a copy of the order confirming the report of the sale. And if the mortgaged premises do not sell for sufficient to pay the costs, over and above the amount reported due, with interest, the costs, or so much as is deficient, must be charged personally on the defendants.