SILAS D. GIFFORD, as Receiver, etc., Respondent, v. MICHAEL AUGUSTINE CORRIGAN, as Executor, etc., Appellant.

A covenant in a deed by which the grantee assumes and agrees to pay a mortgage upon the premises conveyed, after it has come to the knowledge of the owner of the mortgage and has been assented to, and adopted by him as a security for his own benefit, is not revocable.

A release, therefore, by the grantor, without the assent of the mortgage creditor after such acceptance and adoption, does not discharge the grantee, and is no defense to an action upon the covenant.

Reported on a former appeal, 105 N. Y. 223.

*Lawrence* v. *Fox* (20 N. Y. 268) and the doctrine upon which the decision in that and other kindred cases is based, discussed.

(Argued October 16, 1889; decided November 26, 1889.)

APPEAL by defendant Corrigan, as executor of Cardinal John McCloskey, deceased, from a judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 11, 1889, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage executed by defendant, the Father Matthew Temperance Society. Defendant Corrigan, as executor, was sought to be charged for any deficiency on sale upon a covenant in a deed of the mortgaged premises executed to his testator by John McEvoy,

by the terms of which the grantee assumed and agreed to pay the mortgage.

The facts, so far as material to the questions discussed, are stated in the opinion.

*Edward C. Boardman* for appellant.  The release by the executor of McEvoy of McCloskey from the covenant of assumption contained in the deed from McEvoy to McCloskey discharged the latter from all liability thereunder.  (*Whiting* v. *Gearty*, 14 Hun, 500; *Kelly* v. *Roberts*, 40 N. Y. 432, 440; *Douglas* v. *Wells*, 18 Hun, 88; *Pardee* v. *Treat*, 82 N. Y. 389; *Burr* v. *Beers*, 24 id. 179.)  The liability of the assuming grantee to the mortgagee cannot be upheld.  (*Cumberland* v. *Coddrington*, 3 Johns. Ch. 226; *Bleeker* v. *Bingham*, 3 Paige, 246; *Curtis* v. *Tyler*, 9 id. 432; *Halsey* v. *Reed*, Id. 446; *Torrey* v. *Bank of Orleans*, Id. 649; *King* v. *Whitely*, 10 id. 465; *Marsh* v. *Pike*, Id. 595; *Blyer* v. *Mulholland*, 2 Sandf. Ch. 478; *Cornell* v. *Prescott*, 2 Barb. 16; *Vail* v. *Foster*, 4 N. Y. 312; *Flagg* v. *Munger*, 9 id. 483; *Trotter* v. *Hughes*, 12 id. 74; *Hartley* v. *Harrison*, 24 id. 170; *Burr* v. *Beers*, Id. 178; *Bentley* v. *Vanderheyden*, 35 id. 677; *Ricard* v. *Sanderson*, 41 id. 179; *Garnsey* v. *Rogers*, 47 id. 233; *Thorp* v. *Keokuk Coal Co.*, 48 id. 253; *Vrooman* v. *Turner*, 69 id. 280, 283; *Campbell* v. *Smith*, 71 id. 26; *Comstock* v. *Drohan*, Id. 9; *Calvor* v. *Davies*, 73 id. 211; *Paine* v. *Jones*, 76 id. 274; *Marshall* v. *Davis*, 78 id. 414; *Pardee* v. *Treat*, 82 id. 385; *Hand* v. *Kennedy*, 83 id. 149; *Slauson* v. *Watkins*, 86 id. 597; *Carter* v. *Holahan*, 92 id. 498; *Bennett* v. *Bates*, 94 id. 354; *Crowe* v. *Lewin*, 95 id. 423; *Fairchild* v. *Lynch*, 99 id. 359; *Wilbur* v. *Warren*, 104 id. 192; *Wilcox* v. *Campbell*, 106 id. 325; *Cole* v. *Cole*, 110 id. 630; *Cole* v. *Malcom*, 66 id. 363, 366; *Acer* v. *Hotchkiss*, 97 id. 395, 403; *Twombly* v. *Cassidy*, 82 id. 155, 158; *Jumel* v. *Jumel*, 7 Paige, 591; *Roe* v. *Baker*, 82 N. Y. 435; *Simpson* v. *Brown*, 68 id. 240; *Johnson* v *Morgan*, Id. 496; *Merrill* v. *Green*, 55 id. 270; *Wheat* v.

*Rice,* 97 id. 302; *Mellen* v. *Whipple,* 1 Gray, 317.) This court has, in several cases, relieved the assuming grantee from liability under the covenant of assumption. (*Flagg* v. *Munger,* 9 N. Y. 483; *Kilmer* v. *Smith,* 77 id. 227; *Judson* v. *Dada,* 79 id. 373; *Dunning* v. *Leavitt,* 85 id. 30; *A. S. Inst.* v. *Burdick,* 87 id. 40; *Dey Ermand* v. *Chamberlin,* 88 id. 658; *Crowe* v. *Lewin,* 95 id. 423.)

*Ralph E. Prime* for respondents. There was a delivery of the deed. (*Ten Eyck* v. *Perkins,* 2 Wend. 308; *Church* v. *Gilman,* 15 id. 656; *Lady Superior* v. *McNamara,* 3 Barb. 375; *Brown* v. *Austin,* 35 id. 341; *Knowls* v. *Barnhart,* 71 N. Y. 474; *Shrader* v. *Banker,* 65 Barb. 608.) There was an acceptance of the deed. (105 N. Y. 225; *Brooks* v. *A. E. Co.,* 14 Hun, 368; Dunlap's Paley on Agency, 172.) The release was not *bona fide.* (*Trustees* v. *Anderson,* 30 N. J. Eq. 366; Thomas on Mortgages [2d ed.] 402, § 604.) The assumption clause and its obligations were inviolable and the release was ineffectual. (*Ranney* v. *McMullen,* 5 Abb. N. C. 246, 259. *Hartley* v. *Harrison,* 24 N. Y. 170, 172; *Gurnsey* v. *Rogers,* 47 id. 242; *Douglass* v. *Wells,* 18 Hun, 88; *Simson* v. *Brown,* 6 id. 251; *Bay* v. *Williams,* 112 Ill. 91; Thomas on Mortgages, § 763; *Whitney* v. *Gearty,* 14 Hun, 501; *Berkshire Ins. Co.* v. *Hutching,* 100 Ind. 496; *Davis* v. *Galloway,* 30 id. 112; *Gilbert* v. *Sanderson,* 56 Iowa, 349; *Dunham* v. *Bishoff,* 47 Ind. 211; *Carnahan* v. *Tousey,* 93 id. 561; *Kelly* v. *Roberts,* 40 N. Y. 432; Jones on Mortgages, § 84, 763; *Gifford* v. *Corrigan,* 105 N. Y. 223, 227, 228, 229.)

FINCH, J. On a previous appeal we determined in this case that the record of the deed to the defendant's testator, McCloskey, by which the grantee assumed the payment of plaintiff's mortgage, was not, under the circumstances, sufficient proof of the delivery and acceptance of the deed. As the case now stands the effect of that record is fortified by direct proof of the delivery and strong circumstantial evi-

dence of the acceptance. Both facts are now explicitly found by the trial court, but the appellant again denies the sufficiency of the proof.

The mortgage was executed in 1869. The land which it covered was sold and conveyed to McEvoy in 1870. McEvoy was a parish priest and held the title until 1878, when he conveyed to McCloskey, the defendant's testator, who in and by the deed assumed the payment of the outstanding mortgage. Two things occurred the next year. McCloskey was informed by letter that upon the premises owned by him, describing those conveyed by McEvoy, there was a mortgage to Masterton, payment of which was requested, and a few days after, in a personal interview with the attorney acting for the mortgagee, was told of the deed and its record and the assumption clause was read to him and his liability under it asserted. McCloskey answered that he would communicate with Father Keogh; that he had referred the matter to him, and that the witness would hear from Keogh. The latter was the successor of McEvoy as parish priest and owed his appointment to the cardinal. The second thing was that the account for the rents of the property collected by Keogh were by him returned once a year to the chancery office which managed the cardinal's business affairs relating to the church. Within one year, therefore, after the record of the deed McCloskey knew all about it, and instead of repudiating it and refusing acceptance, simply referred the creditor to the parish priest, who began a uniform system of collecting the rents of the property and returning the facts to the cardinal's business office, which was their proper repository. Keogh not only remained in possession under McCloskey, but insured the premises in the name of the cardinal. For some time after its record the deed remained in the custody of McEvoy, but as early as 1882 he delivered it to O'Connor, who was a clerk in the chancery office. The superintendent of that office was Preston. He is called in the record vicar-general and chancellor and monseigneur. Whatever his ecclesiastical title, his

own evidence shows that he was merely a subordinate or secretary of the cardinal, with no authority of his own, and depended wholly upon the directions of his superior, either general or specific. His attention was called to the deed after its delivery at the chancery office by O'Connor, who delivered it. Preston says that the next time he saw Keogh he "positively forbade him to have anything to do with that hall or to accept any rent for it." This is said to have occurred in 1882. It does not appear that Preston had any authority from the cardinal to issue this order to Keogh, or any general direction which covered it. It is certain that Keogh did not obey it, for he continued to collect the rents and report them as part of his parish accounts to the chancery office. Preston was either ignorant of the current transactions which it was his duty to supervise, or he had withdrawn his command, or the parish priest was deliberately defying his superiors and they were patiently submitting to it. At all events, the deed rested in the chancery office, the priest kept possession of the property, and accounted for its rents to McCloskey; no offer of a reconveyance has been made, and the record is searched in vain for any word or act of refusal or repudiation by McCloskey. On such a state of facts the finding of the Special Term that there was a delivery and acceptance may easily stand, and must conclude us on this appeal.

But another circumstance introduces an additional defense and raises a further question. Just after the issue of a summons in this action and the filing of a *lis pendens*, the executor of McEvoy formally released McCloskey from his covenant, and the latter pleads that release. It asserts that the deed was never delivered, which is found to be an untruth; that the assumption clause was inserted by mistake and inadvertence, of which there is not a particle of proof; and then in further consideration of $1 formally releases the Cardinal from his covenant. This release was executed after the knowledge of the deed of McCloskey and the covenant contained in it had reached the mortgagee; after the latter had accepted and

adopted it as made for his benefit and communicated that fact to the debtor by a formal demand of payment; after the mortgagee had, for three years, permitted the grantee to absorb and appropriate the rents and profits in reliance upon the covenant; and after he had commenced an action for foreclosure by the issue of a summons and filing of a *lis pendens*, at a moment when the executor who released wsa aware that trouble was approaching, but before McCloskey was actually served or had appeared in the action.

Is this release thus executed a defense to this action? I shall not undertake to decide, if, indeed, the question is open, (*Knickerbocker Life Ins. Co.* v. *Nelson*, 78 N. Y. 137; *Comley* v. *Dazian*, 114 id. 161, 167), whether in the interval between the making of the contract and the acceptance and adoption of it by the mortgagee it was or was not revocable without his assent. However that may be, the only inquiry now presented is, whether it is so revocable after it has come to the knowlege of the creditor, and he has assented to it and adopted it as a security for his own benefit. My judgment leads me to answer that question in the negative.

Of course, it is difficult, if not impossible, to reason about it without recurring to *Lawrence* v. *Fox* (20 N. Y. 268), and ascertaining the principle upon which its doctrine is founded. That is a difficult task, especially for one whose doubts are only dissipated by its authority, and becomes more difficult when the number and variety of its alleged foundations are considered. But whichever of them may ultimately prevail, I am convinced that they all involve, as a logical consequence, the irrevocable character of the contract after the creditor has accepted and adopted it, and in some manner acted upon it. The prevailing opinion in that case rested the creditor's right upon the broad proposition that the promise was made for his benefit, and, therefore, he might sue upon it, although privy neither to the contract or its consideration. That view of it necessarily involves an acquisition at some moment of time of the right of action which he is permitted to enforce. If it be

possible to say that he does not acquire it at the moment when the promise for his benefit is made, it must be that he obtains it when it has come to his knowledge and he has assented to and acted upon it. For he *may* sue; that is decided and conceded. If he may sue, he must, at that moment, have a vested right of action. If it was not obtained earlier it must have vested in him at the moment when his action was commenced, so that the right and the remedy were born at the same instant. But there is no especial magic in a law suit. If it serves for the first time to originate the right which it seeks to enforce, it can only be because the act of bringing it shows unequivocally that the promise of the grantee has come to the knowledge of the plaintiff, that the latter has accepted and adopted it, that he intends to enforce it for his own benefit, and gives notice of that intention to the adversary. From that moment he must be assumed to act or omit to act in reliance upon it. But if all these things occur before a suit commenced, why do they not equally vest the right of action in the assignee? What more does the mere law suit accomplish? And so the contract between grantor and grantee, if revocable earlier, ceases to be so when by his assent to it and adoption of it the creditor brings himself into privity with it and elects to avail himself of it, and must be assumed to have governed his conduct accordingly. I see no escape from that conclusion.

But two of the judges who concurred in the decision of *Lawrence* v. *Fox* stood upon a different proposition. They held that the mortgagor granting the land accepted the grantee's covenant, as agent of the mortgagee who might ratify the act with the same effect as if he had originally authorized it. While I think the idea of such an agency is a legal fiction, having no warrant in the facts, yet the same result as to the power of revocation follows. While the agency remained unauthorized it might be possible to change the transaction, but after the ratification the promise necessarily becomes one made to the mortgagee, through his agent, the mortgagor, acting lawfully in his behalf, and from that

moment cannot be altered or released without his sanction and consent.

But another basis for the action has been asserted, applicable, however, only to cases like the present, where, on foreclosure of the mortgage, its owner seeks a judgment for a deficiency against the new covenantor. In *Burr* v. *Beers* (24 N. Y. 179), and again in *Garnsey* v. *Rogers* (47 id. 242) it was pointed out that the liability of the grantee to the mortgagee rested upon the equitable right of subrogation, and had been recognized and enforced long before *Lawrence* v. *Fox* made its appearance. It was held that where the mortgagor acquired a new security for his indemnity against the debt which he owed to the mortgagee, the latter might, in equity, be subrogated to the right of his debtor, and, under the statute permitting any person liable for the mortgage debt to be made defendant and charged with a deficiency in the foreclosure, the new covenant became available to the mortgagee It was so held in *Halsey* v. *Reed* (9 Paige, 446), and the right of the mortgagee was put upon the equity of the statute. That, if a sound proposition, was all very well so long as there was supposed to be no equivalent remedy at law, but after the decision of *Lawrence* v. *Fox* that remedy existed. And so in *Thorp* v. *Keokuk Coal Company* (48 N. Y. 258) the court said that it saw no reason for invoking the doctrine of equitable subrogation, or resting upon it in such a case. When the law has absorbed, in a broader equity, the narrow one enforced in chancery, the form and measure of the latter ceases to be of consequence. One does not seek to trace the river after it has lost itself in the lake. And so I think the suggestion is well founded. But if I am wrong about that, as, perhaps, I may prove to be, and the right of the present plaintiff against the Cardinal's estate does stand upon the doctrine of equitable subrogation, still I think the same result follows. When does that equitable right arise and become vested in the creditor? It would seem that it must be when the situation is created out of which the equity is born. If it be possible to adjourn

it to a later period, it must certainly attach when the creditor asserts his right to it and notifies the other party of his intention to rely upon it. As a right, founded upon the equity of the statute, it must have come into being before the foreclosure suit was commenced, for the permission reads, "any person who is liable to the plaintiff for the payment of the debt secured by the mortgage may be made a defendant in the action." His liability must precede the commencement of the action. It must exist as a condition of his being sued at all; and so, assuming that this action can be maintained against him upon his promise, the right of action must have arisen at once upon the delivery of the deed, or, at the latest, when the promise came to the knowledge of the creditor, and he assented to and adopted it.

I have been quite favorably impressed with a fourth suggestion respecting the basis of these rights of action which appears in the opinion of ANDREWS, J., rendered when this case was before us on a previous appeal. "After all," he says, "does not the direct right of action rest upon the equity of the transaction?" If we discard the fictitious theory of an agency, what remains is the equitable right of subrogation swallowed up in the greater equity of the legal right founded on the theory of a promise made for the benefit of the creditor. It is no new thing for the law to borrow weapons from the arsenal of equity. The action for money had and received is a familiar illustration. May we not deem this another? If we do, and the door is thus opened wide to equitable considerations, I am quite sure it will follow that while no right of the mortgagee is invaded by a change of the contract before it is brought to his knowledge, and he has assented to it and acted upon it, yet to permit a change thereafter, while the creditor is relying upon it would be grossly inequitable and practically destroy the right which has maintained itself after so long a struggle.

It seems to me, therefore, that however we may reasonably differ as to the doctrine underlying the plaintiff's right of

action, yet all the roads lead to the one result that upon the facts of this case the release to McCloskey was wholly ineffectual.

The judgment should be affirmed, with costs.

All concur except Danforth and Peckham, JJ., dissenting.

Judgment affirmed.