MARTIN and MERWIN, JJ., concurred.

Judgment reversed on the exceptions and a new trial ordered,
with costs to abide the event.

---

85   75
92  140

85   75
39ap214

85   75
45ap223

THE BINGHAMTON SAVINGS BANK, Respondent, *v.* THE BINGHAMTON
TRUST COMPANY, Appellant, Impleaded with Others.

*Assumption, by a grantee, of a mortgage on an undivided portion of premises, another
undivided portion of which is conveyed to him — constructive notice to the grantee's
incumbrancers and grantees — vendor's lien for the purchase price of land.*

When a grantee accepts a conveyance of an undivided interest in a piece of real
estate by a deed which contains a provision that he shall pay, as part of the
purchase price, a certain bond and mortgage given by the grantor upon another
undivided interest in the same premises, the mortgagee becomes entitled to
receive the purchase money mentioned in said deed, and may maintain an
action against the grantee for the payment of such purchase price, provided the
grantor was personally liable to the mortgagee for the debt, the payment of which
was thus secured by such grantor to the mortgagee.

The performance of the covenant by the grantee, by the payment to the mort-
gagee, would be for the benefit of the grantor, and she has a legal interest that
such covenant be performed in favor of the mortgagee.

A lien for the unpaid purchase money which accrues in favor of the grantor at
the time of a conveyance is not waived, satisfied or canceled by a covenant
inserted in the deed to her grantee requiring him to assume a mortgage.

The effect of such a provision contained in a deed is to render the grantee person-
ally liable for the payment of the mortgage, as well as to create a lien upon
the land which he receives from his grantor, and to obligate him to pay the
purchase price by applying it upon such mortgage indebtedness of the grantor.

The recitals in such deed and the statement therein that the purchase price is
unpaid are in effect notice to the grantees or incumbrancers of such grantee of
the fact that the purchase money was to be paid to the mortgagee, and that at
the time the grantee received the deed the grantor had not been paid the pur-
chase price for the premises conveyed thereby — it being notice of such facts to
the grantee's subsequent grantees or incumbrancers they are presumed to have
been put upon inquiry and upon inquiry to have ascertained the actual situa-
tion in respect to the non-payment of the purchase price.

The mortgagee will be required to first exhaust the lien acquired by him upon
the undivided interest in such lands conveyed by his mortgagor to such grantee
and to apply the proceeds of the sale thereof in liquidation of the grantor's mort-
gage held by him.

If a person becomes a lienor or grantee of real estate for a valuable consideration, without notice of the unpaid purchase money due and unpaid by his grantor therefor, he may maintain his right to the land as against the person to whom such purchase price is due from his grantor; but the law presumes an intention on the part of a vendor to retain his lien for the purchase money of real estate sold by him, and imposes upon the purchaser the burden of proving the contrary.

APPEAL by the defendant, The Binghamton Trust Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 16th day of April, 1894, upon the decision of the court rendered after a trial at the Broome Special Term directing the foreclosure and sale of certain mortgaged premises.

This is an action to foreclose a mortgage held by the plaintiff, The Binghamton Savings Bank, executed by May E. White for $2,500, on March 4, 1889, upon an undivided half of the premises described in the complaint, known as the White & Fuller Brewery property. When May E. White executed the mortgage to the plaintiff in March, 1889, she executed and delivered therewith her personal bond obligating herself to pay the debt mentioned in said bond and mortgage. The mortgage was recorded on the 4th of March, 1889. On the 10th day of July, 1891, the defendant May E. White executed another bond dated on that day in the penalty of $5,000 to the plaintiff, and as collateral thereto on the same day she executed and delivered her mortgage whereby she conveyed to the plaintiff the same undivided half of the premises described in the mortgage of March, 1889, and the mortgage of July, 1891, was recorded on the 10th of July, 1891. May E. White was in default in observing the conditions of the bond and mortgage of March, 1889, when this action was commenced. Subsequent to the execution of the mortgage of March, 1889, and on the 4th of November, 1889, May E. White, by a deed of purchase from the defendant Fred L. White, which was recorded June 23, 1890, became the owner in fee of an undivided one-fourth of the premises described, and on the 23d day of June, 1890, May E. White, " by deed of conveyance duly executed, sealed, acknowledged and delivered by her, duly conveyed to the defendant Fred L. White the same undivided one-fourth of said described premises that was conveyed to her by said Fred L. White on said November 4, 1889, which deed from said May E. White contained the follow-

ing provisions : ' The second party assumes and agrees to pay as part of the purchase price of the above-described premises the bond and mortgage given by the first party hereto to the Binghamton Savings Bank, of date the 4th day of March, 1889, for the sum of $2,500, and recorded in Broome county clerk's office in book of mortgages No. 81 at page 485 ; ' which is the mortgage and bond first set forth in the complaint ; that said deed was duly recorded in the office of the clerk of Broome county on June 23d, 1890." ·

It is found as a fact : " That on or about the 10th day of February, 1891, the defendants Fred L. White and Mary S. White, his wife, duly executed, sealed, acknowledged and delivered to the defendant, the Binghamton Trust Company, a mortgage on the undivided half of the premises described, the premises conveyed being the one-half part, which was not conveyed by the plaintiff's said mortgage, by which they granted, mortgaged and conveyed to said the Binghamton Trust Company such undivided half of said premises, to secure the payment to said trust company of any and all indebtedness on notes made or indorsed by said Fred L. White, or by the firm of White & Hargrave, which were then held, or should afterward be held, by said the Binghamton Trust Company, to the amount of $17,000, which mortgage was duly recorded on said 10th day of February, 1891, in Broome county clerk's office, in book of mortgages 86 at page 323." It is also found that the indebtedness secured by said mortgage was not paid prior to February 10, 1892, and that there was " actually due upon the said notes and indebtedness secured by said mortgage on said 10th day of February, 1892, the principal sum of $14,900," to the trust company. It is also found that at the time of the execution of the mortgage on the 10th of February, 1891, to the Binghamton Trust Company, it " had no actual knowledge of any claim on the part of said May E. White that the mortgage given by her to the Binghamton Savings Bank was a lien upon any part of the land covered by the mortgage given by said Fred L. White and wife to the Binghamton Trust Company as aforesaid, or that said May E. White claimed to have any interest in or lien upon said premises, that is, upon the one-half part owned by Fred L. White."

It is found " That a short time thereafter, and within ten days thereafter, it caused a search to be made of the records in regard to the title of the said Fred L. White to the premises covered by said

mortgage, and thereupon learned of the contents of the deed from May E. White to Fred L. White, dated June 23, 1890." It is also found "That soon after the 11th day of April, 1891, and before the 14th day of that month, the Binghamton Trust Company was informed by the attorney for May E. White that she claimed that the mortgage given by her to the Binghamton Savings Bank, the plaintiff herein, was a lien upon the land covered by the mortgage given by said Fred L. White and wife to the Binghamton Trust Company, that is, that the mortgage given by her to the Binghamton Savings Bank had become a lien upon said premises by agreement between her and the said Fred L. White, as set forth in said deed of June 23, 1890, and for other reasons." The mortgage to the Binghamton Trust Company was foreclosed, and the premises covered by it were sold, and the trust company purchased the undivided half owned by Fred L. White and mortgaged to the trust company. It is found that in the month of April, 1891, Fred L. White "Became insolvent and unable to pay his debts, and has remained insolvent down to the time of the trial of this action." It is also found "That the said deed of June 23, 1890, mentioned in said foregoing thirteenth finding, expressed a consideration of $5,250, but the actual consideration agreed upon by the parties to said deed, as the purchase price of the premises by said deed conveyed, was the payment by the grantee therein, to the Binghamton Savings Bank, of its bond and mortgage bearing date of March 4, 1889, being the bond and mortgage set forth in the complaint and mentioned in the foregoing second and third findings of fact, and also being the same bond and mortgage referred to in the covenant contained in said deed of date of June 23, 1890. That said purchase price was not paid, nor has the consideration of said conveyance of June 23, 1890, or any part thereof, been paid." It is found "That said Fred L. White has not performed such agreement other than by entering into the covenant inserted in said deed of date of June 23, 1890, mentioned in the foregoing thirteenth finding."

As matter of law the court found :

" *First.* That by the covenant contained in and recorded with the deed from said May E. White to said Fred L. White, of the date of June 23, 1890 said Fred L. White, the grantee therein named, became liable for the payment of the amount of plaintiff's first

bond and mortgage set forth in the foregoing second and third findings of fact, to the holder thereof, and the undivided one-fourth part of the property conveyed by said deed of June 23, 1890, became chargeable in equity with the payment of such bond and mortgage, and the amount of such bond and mortgage became an equitable lien on said fourth part while held by the grantee under said deed.

" *Second.* That the recitals and provisions contained in said deed of June 23, 1890, were notice to the defendant, the Binghamton Trust Company, that such portion of the purchase price of said fourth part so conveyed remained unpaid as was sufficient to pay and satisfy the amount of said first bond and mortgage of the plaintiff. That they were also notice to said the Binghamton Trust Company of the covenant of said Fred L. White contained in such deed to pay and satisfy said bond and mortgage, and also that said one-fourth interest in the property conveyed by said deed is primarily chargeable in equity with the plaintiff's said first bond and mortgage."

Also, " That said undivided one-fourth interest * * * is primarily chargeable in equity with the payment of the amount of plaintiff's first bond and mortgage, executed by said May E. White on said 4th day of March, 1889, and said one-fourth part is the primary security out of which the amount of said bond and mortgage should be paid, and the said May E. White is entitled to have said undivided one-fourth interest in the premises that were conveyed by her to said Fred L. White by said deed of June 23, 1890, sold under a decree of the court, and the proceeds derived from such sale applied to the payment of the amount of said first bond and mortgage of the plaintiff of date of March 4, 1889, before the plaintiff sell the one-half interest in the property mortgaged by said May E. White to plaintiff, on March 4th, 1889."

*W. J. Welsh,* for the Binghamton Trust Company, appellant.

*D. S. & R. B. Richards,* for May E. White, respondent.

*G. L. Sessions,* for the plaintiff, respondent.

HARDIN, P. J.:

Manifestly the purchase price of the undivided quarter conveyed by May E. White to Fred L. White has never been paid by him to

her, or to her appointee, for her benefit. When the conveyance was made by her, her deed contained the covenant on the part of her grantee, Fred L. White, that the purchase price, to the extent of $2,500, should be paid to her creditor, the plaintiff, who held her personal covenant as well as her mortgage, to secure the sum upon her undivided half of the premises mentioned in the mortgage. As soon as Fred L. White accepted the conveyance from his sister, May E. White, with the conditions and covenants as to payments of the purchase price mentioned in the deed, the plaintiff became entitled to receive the purchase money mentioned in said deed, and to maintain an action against Fred L. White for the payment of the purchase price, inasmuch as May E. White was personally liable to the plaintiff for the debt secured by her to the plaintiff. (*Carrier* v. *United Paper Co.*, 73 Hun, 287; *Vrooman* v. *Turner*, 69 N. Y. 282; *Lawrence* v. *Fox*, 20 id. 268; *Pardee* v. *Treat*, 82 id. 389.)

It was said in *Burr* v. *Beers* (24 N. Y. 179), and in *Garnsey* v. *Rogers* (47 id. 242), that the liability of the grantee to the mortgagee rested upon the equitable right of subrogation; and in referring to that doctrine FINCH, J., says, in *Gifford* v. *Corrigan* (117 N. Y. 264), viz.: "It was held that where the mortgagor acquired a new security for his indemnity against the debt which he owed to the mortgagee, the latter might, in equity, be subrogated to the right of his debtor, and, under the statute permitting any person liable for the mortgage debt to be made defendant and charged with a deficiency in the foreclosure, the new covenant became available to the mortgagee." And the same judge, later on in the same case, seems to approve of the suggestion of ANDREWS, J., given in the following language: "After all, does not the direct right of action rest upon the equity of the transaction?" The doctrine stated in *Gifford* v. *Corrigan* (*supra*) was approved and restated in *Townsend* v. *Rackham* (143 N. Y. 522. See *Gifford* v. *Corrigan*, 105 N. Y., near the close of the opinion, at page 229.)

In *N. Y. Life Ins. Co.* v. *Aitkin* (125 N. Y. 660) it was held that a covenant in a deed whereby the grantee assumes and agrees to pay a mortgage, after it has come to the knowledge of the owner of the mortgage and has been adopted by him as security for his own benefit, "may not be released by the grantor without the assent

of the mortgage creditor, and such a release is no defense to an action brought by the latter upon the covenant." And in *Post* v. *W. S. R. R. Co.* (123 N. Y. 580) it was held that " an undertaking in a deed on the part of the grantee to perform certain acts, becomes, on delivery of the deed to and acceptance by him, effectual as a contract on his part to perform the undertaking, and, upon refusal on his part to perform, an action for specific performance or for damages is maintainable." The performance of the covenant by Fred, the grantee in the deed, by payment to the plaintiff, would have been for the benefit of the grantor, as she had a legal interest that the covenant be performed in favor of the plaintiff. (*Durnherr* v. *Rau*, 135 N. Y. 219.) In the case in hand the covenant was entered into for the benefit of the grantor, and such benefit would inure to her by the performance, and it was, therefore, within the contemplation of the parties that a benefit should accrue to her by the performance of the covenant on the part of the grantee in the deed.

In *King* v. *Whitely* (10 Paige, 468) it was said that the principle of the cases " is that in equity the creditor is entitled to the benefit of all collateral obligations for the payment of the debt, which a person standing in the situation of a surety for others has received for his indemnity, and to relieve him or his property from liability for such payment." (See *Curtis* v. *Tyler*, 9 Paige, 435; *Halsey* v. *Reed*, Id. 451.) The lien for unpaid purchase money which accrued in favor of May E. White at the time of the conveyance was not waived, satisfied or canceled by the covenant inserted in the deed which she made to her grantee, Fred L. White. (2 Washb. on Real Prop. [3d ed.] 90, § 16, *507; *Maroney* v. *Boyle*, 57 N. Y. St. Repr. 604; 141 N. Y. 462.) May E. White did not expressly and consciously waive her lien for unpaid purchase money; on the contrary, she inserted a clause in the deed which she gave, requiring it to be satisfied by paying the same upon an indebtedness for which she was personally liable to the plaintiff. The effect of the stipulation in her deed to Fred was to render him personally liable, as well as to create a lien upon the land which he received from her, to pay the purchase price therefor by applying it upon an indebtedness of hers to the savings bank, the plaintiff. The recitals in

her deed to Fred, and the statement that the purchase price was unpaid, were, in effect, notice to his subsequent grantees or incumbrancers of the fact that the purchase money was to be paid to the plaintiff, and that at the time she gave the deed she had not been paid therefor; and being notice of such facts to his subsequent grantees or incumbrancers, they are presumed to have been put upon inquiry, and upon inquiry to have ascertained the actual situation in respect to the non-payment of the purchase price. ( *Williamson* v. *Brown,* 15 N. Y. 354; *Pitney* v. *Leonard,* 1 Paige, 461; *Howard Ins. Co.* v. *Halsey,* 4 Seld. 272; *Brush* v. *Ware,* 15 Pet. 93; *Jumel* v. *Lagardere,* 7 Paige, 591; *Acer* v. *Westcott,* 46 N. Y. 384.)

The question of constructive notice was involved in *McPherson* v. *Rollins* (107 N. Y. 322), and in the course of the opinion upon that question it was said : " As intending purchasers they must be presumed to investigate the title and to examine every deed or instrument forming a part of it, especially if recorded ; they must, therefore, be deemed to have known every fact so disclosed (*Acer* v. *Westcott,* 46 N. Y. 384), and every other fact which an inquiry suggested by those records would have led up to."

In *Cordova* v. *Hood* (17 Wall. 1) it was held that where a deed of land shows on its face that the consideration is yet " to be paid," a second purchaser who has notice of the deed takes the land subject to the vendor's lien, " unless such a lien has been in some way waived. In the case of such a deed it is the duty of the new purchaser to inquire ; and where inquiry is a duty, the party bound to make inquiry is affected with all the knowledge which he would have got had he inquired." (*Russell* v. *Pistor,* 3 Seld. 171.) Undoubtedly, it is true that if the trust company was a lienor or grantee without notice of the unpaid purchase money, and for a valuable consideration, it might maintain its right to the land as against May E. White, or her appointee. (*Maroney* v. *Boyle,* *supra.*)

It was said in *Garson* v. *Green* (1 Johns. Ch. 308) that a vendor has a lien upon the estate sold for the purchase money while the estate is in the hands of the vendee, and that *prima facie* the purchase money is a lien, and it lies on the vendee to show the contrary. (*Camp* v. *Gifford,* 67 Barb. 434.)

In *Bradley* v. *Bosley* (1 Barb. Ch. 125) it was said that a person

having an equitable lien upon land for the unpaid purchase money may apply to a court of equity in the first instance to enforce the lien without resorting to a suit at law to recover the amount.

In *Benedict* v. *Benedict* (85 N. Y. 625) it appeared that the plaintiff had sold lands to the defendant for which he had not been paid, and that the purchase price remained due, and it was said: "Nothing more was needed to show that he had an equitable lien for such purchase price."

In *Du Bois* v. *Hull* (43 Barb. 26) it was held that a vendor's lien upon the land sold, for the purchase money, can only be waived by taking collateral security, or by an express agreement to that effect. And it was said that the party disputing the lien must show that the vendor agreed to rest on other security and to discharge the lien. The law presumes an intention on the part of the vendor to retain his lien for the purchase money, and imposes upon the purchaser the burden of proving the contrary. And in section 1231 of Story's Equity Jurisprudence it is said: "So, liens may be created on the purchase money, due on the sale of an estate, in favor of a vendee, if it is agreed that the money shall be deposited in the hands of a third person, to be applied in discharge of prior incumbrances, to the extent of such incumbrances. * * * For it is a general principle in equity that, as against the party himself, and any claiming under him voluntarily, or with notice, such an agreement raises a trust."

In *Seymour* v. *McKinstrey* (106 N. Y. 230) it was held that "the lien of a vendor of real estate for unpaid purchase money is good against the vendee and the whole world, unless waived or defeated by an alienation of the property by the vendee to a purchaser without notice."

It seems to follow from the foregoing views that the appointee of May E. White, the plaintiff, was properly required to exhaust the lien acquired by it upon the undivided fourth, and apply the proceeds of the sale thereof in liquidation of the mortgage held by it against the undivided half of the premises, and that such direction as was given at the Special Term, and as has been carried in the judgment, is in accordance with the principles of equity and justice. Thus the purchase price, which never has been paid, is to be asserted against the fourth part of the premises, before the rights of the trust

company therein are asserted.  May E. White's equities transferred to the plaintiff, her creditor, were prior in point of time.  A contrary rule would enable Fred L. White's grantee to obtain the land without payment, and would work an injustice (if not a fraud) upon the rights of May E. White.

(2) It is suggested by the learned counsel for the trust company that the relief accrued to May E. White could not be given in this action, and our attention is called to sections 521 and 1204 of the Code of Civil Procedure.  In section 521 it is provided that a controversy between defendants shall not delay a judgment to which the plaintiff is entitled unless the court otherwise directs.  Inasmuch as no case containing the record of the proceedings at the trial is presented before us, we are not advised that any such question was raised upon the trial.  If it was raised, it may be assumed the court directed the determination of the controversy between the defendants in accordance with the provisions of the section, and that proper relief was demanded in the answers, and that they were properly served on the several defendants.  (*Ostrander* v. *Hart*, 130 N. Y. 406.)

In section 1204 it is provided that judgment may be given for or against one or more defendants, and that it may determine the ultimate rights of the parties on the same side as between themselves, and may grant to a defendant any affirmative relief to which he is entitled.

In *Smith* v. *Hilton* (50 Hun, 237) a motion was made to strike out certain allegations in the answer, and it was granted upon the idea that the allegations were such as to present a new cause of action, and in delivering the opinion in that case and commenting upon the sections of the Code of Civil Procedure, it was said : "They were intended to follow and preserve the powers exercised by courts of equity in actions brought for their determination, as that was permitted and sanctioned by the law and practice previously existing. And by that practice, as well as by the language of these sections, the rights of the defendants, to be determined between themselves, must necessarily be those arising out of, or connected with, or resulting from, the cause of action set forth and maintained by and in favor of the plaintiff."  We see nothing in the case inconsistent with the course adopted on the trial of the action now before us.  That case seems to be in harmony with *Kay* v. *Whittaker* (44 N. Y. 565), where it,

was held that "the relief which defendants may have as against each other, must be based upon the facts involved in the litigation of the plaintiff's claim, and as a part of the adjustment of that claim, and not upon claims with which the plaintiff has nothing to do, and which are properly the subject of an independent litigation between such defendants." (See *Derham* v. *Lee*, 87 N. Y. 599.)

We are not persuaded that the appellant suffered any injury by having all the questions relating to the plaintiff's mortgage and the several rights and interests it has in the property that secures the same determined in this action; inasmuch as Fred L. White and May E. White are parties to the suit, and were actors in the trial, and were heard in connection with the proofs given in regard to the appellant's rights. We think the decision pronounced at the Special Term is in accordance with the rules of equity.

MERWIN, J., concurred; MARTIN, J., not voting.

Judgment affirmed, with costs.