and dimensions being the same, more or less." It is sufficient, however, to say, without further discussion, that the case presented upon this trial does not substantially differ from that presented to the appellate division upon the former appeal, and that under the decision upon that appeal the plaintiff had failed to prove facts entitling him to the commissions, and the court below was right in dismissing the complaint.

It follows that the judgment appealed from was right, and should be affirmed, with costs. All concur.

VAN BRUNT, P. J. I concur upon the ground that the case now does not substantially differ from what it was when presented to the Second department.

---

(44 App. Div. 90.)

### PARRAGA v. RIBON et al.

(Supreme Court, Appellate Division, First Department. October 13, 1899.)

NOVATION—SECURING DEBT OF THIRD PERSON—ACCEPTANCE.

    A., being in need of funds to construct a railroad, contracted with B., whereby the latter was to guaranty credits given by C. and others, and accept a mortgage on the road, which was to remain in force until the credits were discharged. In the mortgage B. agreed to pay the credits, and, after payments of the total indebtedness, was to have a half interest in the proceeds of the road, which was to be transferred to a company to be organized. A later agreement authorized the immediate formation of the company to which the railroad was to be transferred, and provided that, when organized and the property transferred to it, the mortgage should be canceled. Before the transfer was complete, C., having first learned of the arrangement to issue stock in the new company to him for his debt, wrote B., refusing to accept it, and demanding his debt, saying: "You agreed to pay certain credits, among which was included my loan. You have paid all these. The only one unpaid is mine. * * * You will notice my demand for payment of capital and interest is in order." *Held,* that this was an acceptance of B.'s promise to pay C., on consideration, the debt of A., which was therefore not affected by the subsequent cancellation of the mortgage without C.'s consent.

Appeal from judgment on report of referee.

Action by Charles Frederick Parraga against Tomas G. Ribon and another, as surviving members of the firm of Ribon, Castro & Co., impleaded, etc. From a judgment for plaintiff, defendants appeal. Affirmed.

The following is the opinion of the referee (HAMILTON ODELL):

"In this action the plaintiff seeks to recover of the defendants the sum of $15,000 loaned by him to Francisco J. Cisneros, in February, 1884, and which he alleges the firm of Ribon, Castro & Co., of which the defendants are the surviving members, 'for a valuable consideration, undertook, promised, and agreed to pay.' Cisneros was engaged in the construction of the La Dorada Railroad under a concession granted to him by the United States of Colombia. Being in need of funds, he obtained loans from various parties, including Munoz, Espriella & Co., D. De Castro & Co., and the plaintiff. On the 20th of August, 1883, he entered into a contract with the firm of Ribon, Castro & Co., of Paris, by which said firm agreed to guaranty for the term of two years credits which Cisneros might obtain in London to the amount of £44,000. In the said contract it was declared by Cisneros that the railroad enterprise 'is incumbered, or will be so at the time of perfecting the present contract,' to

the extent of £20,000, including £3,000 in favor of the plaintiff, and that, 'with this exception,' the entire undertaking, with its annexes and dependencies, and all rights acquired or that might be acquired by Cisneros under contracts with the United States of Colombia and the sovereign state of Tolima for the construction of said railroad and the bridge over the Magdalena river, etc., 'remain affected to the payment to Ribon, Sastro & Co. of the advances which they make in moneys and of the guaranties which they may give for credits; * * * Cisneros remaining under obligation to make out a legal mortgage, with all the formalities required by law, as soon as Ribon, Castro & Co. demand it;' and it was agreed that such mortgage should be kept in force until Ribon, Castro & Co. should be covered 'in full of their advances, guaranties, interests, expenses, and commissions which may be owed to them, or for which they may be responsible, for account of said railroad and bridge.' By other provisions of the contract, Ribon, Castro & Co. were to act as the agents of Cisneros in Europe and the United States in all matters relating to said railroad and bridge, with unrestricted powers. An agency was to be established in Honda, in the state of Tolima, which should obey Ribon, Castro & Co.'s instructions in the management of the road; and Cisneros agreed to obtain from the national government permission to transfer to Ribon, Castro & Co. the contract for the construction of the road and bridge. On the 2d of October, 1884, a further agreement was made at Honda, in Tolima, between Cisneros and Ribon, Castro & Co., in which it was recited that, by the said contract of August 20, 1883, Ribon, Castro & Co. had bound themselves to guaranty and cover the credits given to Cisneros in London and New York, and that such credits, including those represented by D. De Castro & Co., Munoz, Espriella & Co., and Parraga (the plaintiff), amounted to £67,125, and that Cisneros needed an additional amount of $289,000 to finish the railroad to the Humaderas, which sum Ribon, Castro & Co. had offered to advance 'under the same conditions as the amount (£67,125) mentioned in the previous article; that is, upon the mortgage of the said La Dorada railroad.' The fourth article of the agreement is as follows: 'That, as a consequence of the present deed, Cisneros acknowledges himself the debtor of Messrs. Ribon, Castro & Co., of Paris, in the following sums: The amount of £67,125 sterling, mentioned in the first of these depositions, and the amount of $289,000, mentioned in the second of these depositions; each of said amounts to constitute a net credit in such money or currency as herein expressed. As security of these credits, Cisneros constitutes and makes first mortgage especially and expressly in favor of the aforesaid parties upon the La Dorada Railroad and bridge on the Magdalena river. * * * Said mortgage shall remain in force until the full payment of the credits referred to above, of which Cisneros is the debtor to Ribon, Castro & Co., with interest at the rate of 10 per cent. per annum.' It was further provided that. as compensation for the loans made and services rendered and risks incurred by Ribon, Castro & Co., besides being reimbursed all moneys advanced by them and interest and commissions, they should be entitled to one-half of the net profits of the enterprise until the property should be transferred to a company to be organized. Ribon, Castro & Co. expressly agreed, among other things, 'to pay up wholly the credits of £67,125 sterling, paid to Cisneros in London and New York.' It was also mutually agreed that after payment of the sums advanced by Ribon, Castro & Co., with interest at ten per cent. per annum, all profits that might be obtained by reason of the proceeds of the railroad, sale of shares, mortgage bonds, obligations of the company, and other similar property should be equally divided between them and Cisneros; and further as follows: 'In consequence, independent of Ribon, Castro & Co.'s claim against the La Dorada Railroad Company, the said railroad belongs, not only as far as the portion thus far constructed is concerned, but to that which shall be hereafter constructed, within the bounds assigned to this work on the contracts of June 7 and 14, 1881, entered into by Francisco J. Cisneros with the government of the sovereign state of Tolima first, with that of the United States of Colombia secondly, to the said Cisneros and Ribon, Castro & Co., in equal parts.' This instrument has been referred to by counsel as the 'Honda Mortgage.' It is certainly a mortgage, but it is a good deal more. By it, Ribon, Castro & Co. not only obtained security for their advances, guaranties, interest, and commissions, but they also acquired an equal interest with Cis-

61 N.Y.S.—65

neros in the entire La Dorada enterprise. The agreement was that the parties 'will divide in equal parts the price that they may obtain for the railroad, after deducting the sum which under this deed is owed to Ribon, Castro & Co.' This was the consideration, or part of the consideration, for Ribon, Castro & Co.'s agreement to 'pay up wholly' the debt due from Cisneros to Parraga,—part of the £67,125. It is therefore 'the case of a promise made by the defendant upon a valid consideration to a third person for the plaintiff's benefit,' and upon such a promise the plaintiff can maintain an action, although he was not privy to the contract or the consideration. Clark v. Howard, 150 N. Y. 238, 44 N. E. 695. But the learned counsel for the defendants insist that, even if Ribon, Castro & Co. did assume and promise to pay the plaintiff's loan to Cisneros, the plaintiff has no cause of action against them upon their promise, because it was not accepted by him before (as counsel claims) it was in effect abrogated by other agreements made between Ribon, Castro & Co. and Cisneros, in January and March, 1888. He says: 'Whether the law of New York, or that of France, or that of Colombia be applied is immaterial; all require an acceptance before a revocation of the promise.' As I understand the agreement of January 3, 1888, it was not intended to supersede, and did not operate as a revocation of, the Honda mortgage. It recited that it was 'expedient to give immediate compliance' to the clause in the Honda mortgage relating to the formation of a stock company which should receive a transfer of the La Dorada property, and provided for the organization of such a company, declaring the amount of its capital, and the character of its stock, and directing the manner in which the stock should be distributed. It also provided that, 'as soon as the company shall be organized and the enterprise shall be transferred to it, and the shares shall have been delivered to the shareholders, the mortgage that there is now upon the enterprise in favor of Ribon, Castro & Co. shall be canceled.' This January agreement was modified in some particulars by the agreement of March 10, 1888. The time for organizing the company was extended; the amount of its capital was reduced; changes were made in the allotment or distribution of the shares; and it was expressly declared that, if the organization of the company should be prevented, or if any legal action should be taken to prevent the transfer to it of the La Dorada enterprise, then 'the agreement of January 3d last does not change in any manner whatsoever the obligations and rights that the contracting parties had at the time of its celebration, and that the contract registered in the city of Honda, dated October 2, 1884, as also the agreement additional to said contract, made in Bogota on the 5th of the same October, 1884, will be subsistent in all respects.' The proofs show that the company was organized about the 16th of April, 1888, and that the railroad property was transferred to it in September following, and that some of the stock was issued, but when or to what amount does not appear. On the 12th of September, 1888, a further agreement was executed, to which Cisneros, José G. Ribon (who had succeeded to all the rights and interests of Ribon, Castro & Co.), Rafael G. Ribon, as liquidator of D. De Castro & Co. under dissolution agreement of December 27, 1887, and the La Dorada Railroad Company, Limited, were parties, and by which Cisneros and José G. Ribon 'sold, assigned, and transferred the property and other rights which the said vendors possess in the enterprise of La Dorada to the company called the Dorada Railroad Company, Limited,' and in which it is declared that, inasmuch as such transfer 'is effected by the present instrument,' therefore the Honda mortgage of October 2, 1884, in favor of Ribon, Castro & Co., is canceled, and made null and void without effect.

"Assuming that this provision of the September agreement was effectual to annul and terminate the Honda mortgage, as between the parties, it did not, in my opinion, discharge, or in any manner affect, the defendants' liability to the plaintiff upon their covenant to pay the money loaned by him to Cisneros. The plaintiff's testimony is that he was not informed of the terms of the agreement of August 20, 1883, or the Honda mortgage, until in April or May, 1888, although he had prior knowledge of the fact that some contract had been executed between Cisneros and Ribon, Castro & Co. by which in some way his loan to Cisneros was secured. When, soon after its execution, he was informed of the January, 1888, agreement, he wrote promptly to José G. Ribon, objecting to the provision made for him in shares of the contemplated La Dorada

Company, and saying that such provision was not in accordance with the terms of his loan, 'so that under no circumstances can I accept shares of the R. R. in payment of that debt,' and in closing said: 'I beg you, therefore, that you will not count me among the future shareholders of the R. R., and in organizing the Co. kindly make such arrangements as will allow my receiving, with little delay, the money due me.' On August 10, 1888, he again wrote Mr. Ribon, saying that he had not been able to understand his position, as Cisneros had referred him to Ribon for payment of the sum due, and that he (Ribon) had told him that he (the plaintiff) held the same position towards the railroad that Ribon, as successor and liquidator of Ribon, Castro & Co., did. 'But now,' he said, 'that I am in possession of all the contracts and of the deed of mortgage, which had never been communicated to me in detail, I have a clear idea of my position.' He then referred to the contract of August 20th, by which, he said, 'you agreed to pay certain sums or credits, among which was included my loan. You have paid all these. The only one unpaid is mine. By the deed of mortgage of October, 1884, you again bind yourself to pay me in full. Please read this document, and you will notice that my demand for payment of capital and interest is in order.' Here, it seems to me, was a plain and positive acceptance and adoption by the plaintiff of the defendants' covenant to pay contained in the Honda mortgage, and thereupon that covenant became irrevocable without his consent. Gifford v. Corrigan. 117 N. Y. 257, 22 N. E. 756, 6 L. R. A. 610. It was not, therefore, affected by the agreement of September 12th.

"It is further argued, on behalf of the defendants, that, if any obligation in favor of the plaintiff was assumed by them, it was not to pay the loan referred to in the complaint, but a sum due at a different date, and bearing a different rate of interest; that the Honda mortgage was for the account of all contributors to the La Dorada enterprise; and that the only undertaking of Ribon, Castro & Co. was to hold the property, and distribute the proceeds ratably among all parties interested, which they have done; and that the plaintiff has acquiesced in the disposition of the railroad property, and accepted the shares allotted to him, and thus abandoned any rights against the defendants personally. The facts of the case do not support either of these contentions. The plaintiff is entitled to judgment for the sum claimed, with interest."

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

C. C. Beaman, for appellants.

E. B. Hill, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee.

---

(29 Misc. Rep. 428.)

ONONDAGA NATION et al. v. THACHER.

(Supreme Court, Special Term, Onondaga County. November, 1899.)

1. INDIANS—HISTORICAL RELICS—EQUITABLE ACTION TO RECOVER.

Where wampum belts had been used by a league of Indian nations to commemorate important events, and served them as a purpose of perpetuating the history of their race, such property, being of peculiar and special interest, the loss of which cannot be compensated for by money damages, may be recovered, from persons claimed to be wrongfully in possession thereof, by a suit in equity.

2. SAME—DEMAND.

Where the main object of a suit in equity brought by Indians was to recover possession of wampum belts, claimed to be historical emblems of an Indian league, and alleged to have been sold by the wampum keeper in violation of his duties, and afterwards purchased by the defendant, in good faith, for an adequate consideration, from the keeper's vendee, a