**UNITED STATES v. WARREN R. CO.
et al.**

**SAME v. SYRACUSE BINGHAMTON & N.
Y. R. CO. et al.**

**SAME v. PASSAIC & D. R. CO. et al.**

District Court, S. D. New York.
May 1, 1941.

Mathias F. Correa, U. S. Atty., of New York City (Myles J. Lane, Asst. U. S. Atty., of New York City, of counsel), for plaintiff.

Austin J. McMahon and Douglas Swift, both of New York City, for defendant Delaware, L. & W. R. Co.

INCH, District Judge.

These three actions, Civ. 5—316, relating to the Warren Railroad Company, Civ. 5—317, relating to the Syracuse Binghamton & New York Railroad Company, and Civ. 5—318, relating to the Passaic & Delaware Railroad Company, and the action against the Delaware, Lackawanna & Western Railroad Company as co-defendant in each case, were duly tried together.

There is no material dispute as to the facts. The issues in each action being the same, can be decided in one decision, although, of course, separate findings and judgments must be made and entered.

The United States brings these three actions for the recovery of income taxes duly assessed against the above first mentioned railroads, and against the Delaware, Lackawanna & Western Railroad, because of the claimed liability of that railroad also to pay such taxes.

The complaint in each action alleges that the Delaware, Lackawanna & Western Railroad Company leased the entire railroad property and franchises of these three first named railroad companies. A copy of each lease is attached to and made a part of the complaint in each action. The income taxes in question are those assessed against the Syracuse, Binghamton & New York Company for the years 1933, 1934 and 1935. Against the Passaic & Delaware Company and the Warren Railroad Company for the years 1934 and 1935.

There is no dispute as to the liability of these railroads for the income tax. No appearance has been made in any of the actions on their behalf.

The controversy is really between the United States and the Delaware, Lackawanna & Western Railroad Company which is the lessee of each of these companies.

Accordingly, from now on, the parties will be identified as the lessor and lessee.

There is no necessity, in this opinion, to set forth more than the facts on which the liability, if any, of this lessee depends. The various income tax assessments and similar details will appear in the separate findings.

The leases in the action against the Syracuse and against the Passaic Railroad Companies contain the same tax covenant. That of the Warren Company differs somewhat. The Warren lease is dated October 1, 1857, the Syracuse lease is dated October, 1912, and the Passaic lease is dated November 1, 1882.

The leases are attached to the respective complaints and marked Exhibit A. The leases of the Syracuse and the Passaic contain the following: "And that the said party of the second part (Delaware, Lackawanna & Western Railroad Company) will, during the enjoyment of the demised property and estate under this lease, pay and discharge all taxes and assessments which are or may be imposed, levied or assessed on any property hereby granted, leased or demised, or intended so to be, or on the business, or any of the business done on or with said property, or on the income or profits of the said business, or any of the business done on or with said property, or on the income or profits of the said business, or on the said party of the first part as a corporation, or on any of its rights, privileges or franchises by the United States, or any state, county, township, municipality or other authority having legal authority to impose, assess, levy and collect taxes, imposts or duties."

The lease between the Warren Railroad Company and the Delaware, Lackawanna & Western Railroad Company contains the following:

"Fifth, That they will from time to time and at all times during the continuance of this indenture, pay and discharge all taxes, assessments and impositions which shall or may be legally taxed, assessed or imposed

upon the premises and property hereinbefore leased, granted and demised, or upon any part or parcel thereof whenever the same shall become due and payable."

"Tenth, That they will pay and discharge all claims now existing against the said Warren Railroad Company connecting with or relating to the construction of the said Warren Railroad or the right of way therefor, and that they will also pay and discharge all legal claims and demands which now may exist or hereafter accrue against the said railroad."

In all the leases the lessor directed that the rental be paid to its stockholders. This rental consisted in each case of a fixed percentage on the stock of each railroad accompanied by the covenants as to freedom from taxes as set forth above.

On or about January 31, 1938, the Government through the Collector of Internal Revenue duly served notices of lien and notices of levy upon the lessee, Delaware, Lackawanna & Western Railroad with respect to the aforesaid tax deficiency and interest assessed upon the income of the lessor, and also duly served notice and demand upon the lessee for the payment of the income tax in question.

The lessee has not paid the income tax, or any part thereof.

Section 3670, 26 U.S.C.A., the Internal Revenue Code, and Section 3671, gives a lien in favor of the United States upon all property and rights to property of a person liable but who has refused to pay the proper tax, and such lien arises at the time the assessment list was received by the Collector.

Section 3690, gives the Collector authority to distrain property of a person owing taxes who neglects or refuses to pay same after demand.

As I see it the Government approaches this question of liability of the lessee from two angles: First, the comprehensive one that the expressed intention of the parties to the lease was that the lessee should pay the income taxes in question. Second, that the lessee possesses property, both tangible and intangible, and which has been duly attached sufficient to pay the said income taxes.

We will briefly discuss the claims in the above order.

First: Did the lessee agree to pay these taxes? I think it did.

These leases were for all practical purposes conveyances in fee. Anderson v. Morris & Essex R. Co., 2 Cir., 216 F. 83-91.

The lessors had nothing left with which to pay any taxes, nor could they expect any additional income.

While each of the lessors directed that the rentals be paid to its stockholders, it is well established that such rents constitute income taxable to the lessor. Gold & Stock Telegraph Co. v. Commissioner of Internal Revenue, 2 Cir., 83 F.2d 465, certiorari denied 299 U.S. 564, 57 S.Ct. 26, 81 L.Ed. 415.

To be sure the lessee had previously paid these income taxes and it is so stipulated, but I do not attach any great importance to this fact by itself for it is the contract that controls. Brainard v. New York Central R. Co. 242 N.Y. 125, 151 N.E. 152, 45 A.L.R. 751. It is not without its significance however.

There need be no taxes due from the lessors to the United States when the leases were executed. Helvering v. Wheeling Mold & Foundry Co., 4 Cir., 71 F.2d 749.

The lessee claims, citing the Brainard case, supra, that unless the lease expressly provides for the payment of taxes on the income from rentals received under the lease, the imposition of such a burden on the lessee is not justified, but here the only income that the lessors could possibly receive was from the rent fixed in the lease which was to be paid by the lessee free of all taxes.

When a court finds as a matter of law that a contract is unambiguous, evidence of intention by the subsequent acts of the parties plays no part in the court's decision, but the conduct of the parties may fix a meaning to words of doubtful import. Chicago & Eastern & I. R. Co., 7 Cir., 94 F.2d 296.

The promise to pay a rental of a specified rate of interest, free and clear, was not in the Brainard case. The entire property of the lessor was turned over to the lessee. The lessee, therefore, was fully aware of the fact that the rent in these leases to be paid to the stockholders constituted their sole source of revenue. Therefore, the parties to the leases knew that under these conditions it would have been impossible

to guarantee the stockholders of the lessor a specified return each year unless it was definitely understood and agreed that the lessee would pay all taxes, imposts and other charges which might be levied against the respective lessors.

Many cases in courts of various states are cited by the lessee to the effect that in the absence of a plain contract to the contrary the lessee was not obligated by the tax covenant to pay Federal income taxes assessed against the lessor on the rental received under the lease.

All of the cases, however, indicate that it is the meaning of the contract that is the essential subject of inquiry, and that of the statute is of subordinate consequence and in most of the cases relied on by the lessee there is no guarantee by the lessee to pay the stockholders of the lessor a specified rental free and clear of all taxes.

The language of the leases is specific and plainly shows liability.

There is no reason to disagree with the argument of the lessee as to liability for taxes on real property, which are represented in the covenant plainly to the effect, and there is a difference between business done on the property and "or" with the property and also on the income and profits of said business.

■ An income tax is distinguished from other forms of taxation. It is not a tax on property.

■ The income of these lessors upon which the income tax has been assessed is derived not from the business done on or with the demised property by the lessee, but as rental from the lease itself. Therefore, regardless of the amount of income or profits realized by the lessee from the business on or with the leased property, the rental accrues to the lessor independently and regardless of whether any such business is done or not. The income tax is on the net income from all sources after various deductions and credits.

In these cases before me, however, the lessor had no other possible source of income except that from the lease. There could be no uncertainty.

A careful and reasonable reading of the covenants and a fair consideration of the purpose of the contracts and their particular facts leads to but one conclusion, that the lessee agreed to pay all taxes including income taxes which might be imposed by virtue of the lease.

■ The United States has authority to sue a third party beneficiary where one has agreed with another to pay the Federal income tax of the other. American Equitable Assurance Co. of New York v. Helvering, 2 Cir., 68 F.2d 46.

This is also recognized under the laws of the State of New York. Gifford v. Corrigan, 117 N.Y. 257, 22 N.E. 756, 6 L.R.A. 610, 15 Am.St.Rep. 508.

The above would seem to make unnecessary further discussion of the right of the Government to recover against the lessee. However, it seems to me, that the Government can succeed on its Second Claim, as well.

■ The stockholders of the lessors were beneficiaries and possessed a contract right which could be enforced against the lessee in the event that the latter breached the lease.

The Government had a lien on such property of the lessors as was held by the lessee, and such lien is paramount to the contract right of the stockholders. Such lien may attach to intangible as well as tangible property. United States v. Long Island Drug Company, 2 Cir., 115 F.2d 983.

■ The rent moneys in the hands of the lessee at the time of the notice of lien and levy, filed and served upon the lessee, did not belong to the stockholders of the lessors until paid over. They had no vested rights therein prior to that time.

The lessee would not be damaged by turning over such rents, accrued and payable under the leases, for it had agreed to pay all taxes assessed against the lessor.

The lessee, therefore, had the following intangible assets of the defendant lessors when the distraint proceedings were instituted against it.

The right to force the lessee to pay the income tax of the lessor arising from the agreement, and this right constituted a part of the consideration for each of the leases. The lessors had the right to enforce this provision, and it was a valuable property right subject to lien.

The accrued rentals under the various leases which were in the custody of the lessee on January 31, 1938, which was the day the lessee was duly served with notice of lien and levy—these accrued rents con-

stituted valuable property rights which were subject to lien.

In my opinion judgment should be granted in favor of the plaintiff against the respective lessor railroad companies and against the defendant lessee in each case for the total amount sued for.